Joseph R. Ganley (5643)
Christopher J. Lalli (5398)
Shelby A. Dahl (13856)
**HUTCHISON & STEFFEN, PLLC**
Peccole Professional Park
10080 West Alta Drive, Suite 200
Las Vegas, Nevada 89145
Telephone:    (702) 385-2500
Facsimile:    (702) 385-2086
jganley@hutchlegal.com
clalli@hutchlegal.com
sdahl@hutchlegal.com

*Attorneys for Plaintiff Michael Thomson*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| MICHAEL THOMSON,<br><br>    Plaintiff,<br><br>v.<br><br>ARIA RESORT & CASINO, LLC and MGM RESORTS INTERNATIONAL,<br><br>    Defendants. | Case No.:<br><br>**COMPLAINT** |

Plaintiff Michael Thomson ("Plaintiff") hereby complains against Aria Resort & Casino, LLC ("Aria") and MGM Resorts International ("MGM" and together with Aria hereinafter "the Resorts") as follows.

**PARTIES, JURISDICTION, AND VENUE**

1.   Plaintiff is an individual who resides in Puerto Rico.

2.   Upon information and belief, Aria is a Nevada limited liability company registered to do business in and with its principal place of business in Clark County, Nevada.

3.   Upon information and belief, MGM is a Delaware corporation registered to do business in and with its principal place of business in Clark County, Nevada.

4.   This Court has diversity jurisdiction over the instant dispute pursuant to 28 U.S.C. § 1332.

5. The amount in controversy exceeds $75,000.00, exclusive of costs, interest and attorneys' fees.

6. Complete diversity exists among the parties; Plaintiff is not a resident or domiciled in the same state as any Defendant in this action.

**GENERAL ALLEGATIONS**

7. Plaintiff incorporates by reference all preceding paragraphs of this complaint as though fully set forth herein.

8. Upon information and belief, MGM owns Aria.

9. Upon information and belief, Aria (and MGM through Aria) owns and operates the Aria Resort & Casino located at 3730 S. Las Vegas Blvd ("the Casino").

10. Upon information and belief, Aria (and MGM through Aria) employs the staff and employees at the Casino who interacted with Plaintiff in the events described in more detail below.

11. Aria holds itself out to the public as endorsing responsible gaming.

12. In its Marker Limit Application form, Aria states that, "MGM Resorts International and each of its subsidiaries and affiliates… ENDORSES RESPONSIBLE GAMING."

13. In operating the Casino, Aria has agreed to abide by regulations creating a reasonable expectation by the public that Aria engages in responsible gaming.

14. For example, Regulation 5.011(b) of the Regulations of the Nevada Gaming Commission and Nevada Gaming Control Board state that "[p]ermitting a person who is visibly impaired by alcohol or any other drug to participate in a gaming activity" may be determined to be an unsuitable method of operation.

15. Plaintiff has a long-standing history of patronage at the Casino.

16. Plaintiff has a long-standing, pristine history of honoring the credit instruments ("markers") he has made with Aria.

17. On the night of January 23, 2024, Plaintiff was playing blackjack in the high-limit room at the Casino.

18. Plaintiff recalls taking out one marker that night for $10,000.00. He repaid the marker at the table on the same night of January 23, 2024.

1   19.     His last memory of that night was leaving the high-limit room around midnight with
2   a few thousand dollars worth of chips, intending to return to his hotel room in the Casino.
3   20.     His next memory was waking up on the morning of January 24, 2024 handcuffed to
4   the wall in the Casino security holding room.
5   21.     Plaintiff was told by Casino personnel that Casino security found him sleeping in
6   the Sky Suites lounge, and when woken up by Casino security guards he allegedly lashed out at the
7   security guards and was then detained.
8   22.     Upon information and belief, Plaintiff was detained by Casino security around
9   11:00 am on January 24, 2024.
10  23.     Plaintiff was trespassed from the Casino on January 24, 2024, but no one told
11  Plaintiff about any ostensible outstanding markers at the time.
12  24.     Starting on January 25, 2025, Plaintiff reached out to Natalie Hermosillo
13  ("Hermosillo"), his host at Aria, many times to inquire about what she might know about what
14  happened on the night of January 23rd and morning of January 24th.
15  25.     While Hermosillo stated that Plaintiff had outstanding markers with Aria, she also
16  stated that there was a discrepancy regarding the money taken out by Plaintiff and his wins and
17  losses.
18  26.     Plaintiff expressed his concern to Hermosillo regarding the alleged outstanding
19  marker balance and asked for further details, which Aria failed to provide.
20  27.     Aria's internal notes show that Hermosillo waited months for a variance report to
21  investigate this discrepancy.
22  28.     Despite no indication in Aria's internal notes that the variance report resolved the
23  discrepancy, and with no communication with Plaintiff resolving his concern about this, Aria
24  submitted eight markers totaling $75,000.00 ("the ostensible markers") to Plaintiff's bank for
25  payment.
26  29.     On May 10, 2024, Plaintiff received a call from his bank that $75,000.00 worth of
27  ostensible markers had been submitted for payment by Aria.
28

30. Because Aria had yet to address Plaintiff' concern regarding his alleged outstanding balance with Aria, Plaintiff instructed his bank not to pay the ostensible markers until Plaintiff would conduct his own investigation, which he did by reaching out to Aria for more information, again.

31. The ostensible markers were returned to Aria. Five were marked "Not Authorized" by the bank, while the remaining three were marked "NSF."

32. The Aria told Plaintiff that he allegedly took out eight markers totaling $75,000.00 on the morning of January 24, 2024.

33. Plaintiff has no memory of taking out the ostensible markers.

34. The signatures on most of the ostensible markers appear to only loosely resemble Plaintiff's signature.

35. According to the limited records Aria has provided to Plaintiff, the ostensible markers were taken out between 3:00 and 9:00 am on January 24, 2024.

36. Plaintiff asked the Aria for additional information several other times to investigate the ostensible markers but was stonewalled by Aria.

37. Despite knowing of Plaintiffs' concern regarding the ostensible markers and, without checking Plaintiff's bank records to determine whether his account had sufficient funds to cover the ostensible markers, Aria turned the ostensible markers over to the Clark County District Attorney's Office, Bad Check Unit and filed several complaint forms against Plaintiff.

38. This resulted in Plaintiff being charged with (1) drawing and passing a check without sufficient funds with intent to defraud and (2) theft in Clark County Justice Court Case No. 24-CR-097831.

39. Plaintiff was arrested based on a warrant issued in the criminal case, which compelled Plaintiff to pay $15,480.00 to be released from custody. Upon information and belief, this amount (minus administrative fees) was paid to Aria.

40. Plaintiff agreed to pay restitution to eliminate the stress of having an open, pending criminal case against him and Case No. 24-CR-097831 was dismissed.

41. Upon information and belief, Plaintiff was deliberately surreptitiously drugged on the night of January 23 or morning of January 24, 2024, which led to his complete incapacity.

42. Upon information and belief, based on Plaintiff being so incapacitated that he has little memory of the morning of January 24, 2024 before waking up in the security holding room, Plaintiff's incapacity during the early morning of January 24, 2024 would have been obvious to anyone at Aria, including, but not limited to, Aria's employees and agents.

43. Upon information and belief, Aria failed to take any steps to ensure Plaintiff's safety and instead allowed him to continue gambling and then forcibly detained him without providing any care.

44. Upon information and belief, Plaintiff did not ever sign the ostensible markers.

45. In the alternative, upon information and belief, Plaintiff signed the ostensible markers while incapacitated.

46. All further information regarding Plaintiff's condition and the circumstances of his detainment and the ostensible markers are within Aria's and MGM's exclusive knowledge, custody, and control, and have not been provided to Plaintiff as of the date of this complaint.

### FIRST CLAIM FOR RELIEF

**(Declaratory Relief Against Aria)**

47. Plaintiff incorporates by reference all preceding paragraphs of this Complaint as though fully set forth herein.

48. A case in controversy now exists between Plaintiff and Aria.

49. This controversy is between parties whose interests are adverse.

50. Plaintiff did not have legal capacity to enter into the ostensible markers as set forth in more detail above.

51. Upon information and belief, Plaintiff was deliberately drugged at the time and was incapacitated as a result.

52. In the alternative, upon information and belief, Plaintiff did not sign the ostensible markers.

53. After being informed about the ostensible markers, Plaintiff notified Aria that he had no memory of signing the markers and that the signatures on most of the ostensible markers appear to only loosely resemble his signature, and asked Aria to investigate the markers.

54. Despite this notice to Aria, Aria has failed and refused to acknowledge Plaintiff's condition or that the signatures on the ostensible markers are suspicious.

55. Under NRS Chapter 30, Plaintiff is entitled to declaratory relief concerning the rights and duties of the parties with respect to the ostensible markers, as well as Aria's conduct described herein, specifically, that:

    a. Aria failed to act responsibly toward Plaintiff when its employees failed to prevent Plaintiff from being deliberately drugged and/or incapacitated in the early morning of January 24, 2024, and Aria failed to recognize his incapacitated state;

    b. Aria failed to act responsibly toward Plaintiff when it continued to allow Plaintiff to gamble, did not seek medical attention for Plaintiff, and had Plaintiff execute credit instruments;

    c. Plaintiff was unable to understand in a reasonable manner the nature and consequence of his actions and the transactions during this timeframe, as Aria knew or should have known;

    d. Plaintiff was unable to act in a reasonable manner in relation to the above-described transactions;

    e. Plaintiff lacked capacity to contract when signing the ostensible markers;

    f. In the alternative, upon information and belief, Plaintiffs did not sign the ostensible markers, and the signatures are fraudulent;

    g. The ostensible markers are invalid and/or unenforceable as a matter of law and should be rescinded; and

    h. Plaintiff is entitled to an award of damages and/or equitable relief (including without limitation setoff and/or offset) as a result of Aria's conduct described herein.

56. Plaintiff has, by reason of the foregoing, been compelled to utilize the services of an attorney and is entitled to recover his attorneys' fees and costs from the Resorts.

## SECOND CLAIM FOR RELIEF

### (Negligence Against Aria)

57. Plaintiff incorporates by reference all preceding paragraphs of this Complaint as though fully set forth herein.

58. Aria has a duty of care toward Plaintiff as an invited guest in the Casino as well as duties to Plaintiff as a gaming patron pursuant to Nevada Gaming Regulations.

59. By its conduct described in more detail above, Aria violated its duties to Plaintiff by causing and/or refusing to properly address Plaintiff's incapacitated state while concurrently extending credit.

60. As a direct and proximate result of the foregoing breaches of duties, Plaintiff suffered, *inter alia,* physical confinement while at Aria, economic losses, and a wrongful arrest.

61. As a direct and proximate result of Aria's breaches of their duties described above, Plaintiff has been damaged in an amount in excess of $75,000, the exact amount to be proven at the trial of this matter.

62. Plaintiff has, by reason of the foregoing, been compelled to obtain the services of an attorney and is entitled to recover his reasonable attorneys' fees and costs from the Resorts.

## THIRD CLAIM FOR RELIEF

### (Unfair Trade Practices/Deceptive Trade Practices Against Aria)

63. Plaintiff incorporates by reference all preceding paragraphs of this Complaint as though fully set forth herein.

64. Through its actions described above, Aria has engaged in acts and conduct that constitute unfair trade practices and deceptive trade practices pursuant to NRS Chapter 598.

65. Plaintiff has a private right of action pursuant to NRS 41.600.

66. Aria is in the business of providing entertainment to patrons, which includes gaming.

67. Aria's conduct constituted unfair and deceptive trade practices by, *inter alia*, knowingly taking advantage of Plaintiff's intoxicated condition and entering into transactions with him (or for him) for significant amounts of money.

68. More specifically, Aria caused and/or was aware of Plaintiff's condition and, instead of taking action to allow him to obtain medical treatment and/or to fulfill its duty to promote and effectuate responsible gaming, Aria allowed him to ostensibly agree to $75,000.00 in ostensible markers, all but ensuring Aria's opportunity to obtain additional monies from Plaintiff.

69. In the alternative, Aria accepted ostensible markers with forged signatures and did not verify that the ostensible markers were signed by Plaintiff.

70. As a direct and proximate result of Aria's conduct, Plaintiff has been damaged in an amount in excess of $75,000, the exact amount to be proven at the trial of this matter.

71. Plaintiff is entitled to treble damages pursuant to NRS 598.0999(3).

72. Plaintiff has, by reason of the foregoing, been compelled to obtain the services of an attorney and is entitled to recover their reasonable attorneys' fees and costs from the Resorts.

## FOURTH CLAIM FOR RELIEF

**(Unjust Enrichment Against Aria)**

73. Plaintiff incorporates by reference all preceding paragraphs of this Complaint as though fully set forth herein.

74. Plaintiff conferred a benefit on Aria by choosing to patronize the Casino during January 23 and 24, 2024, and such benefit which was conferred with the knowledge of, and/or with Aria's consent.

75. Aria accepted the benefits by receiving the benefits of Plaintiff's business despite causing and/or being on express notice of Plaintiff's incapacity.

76. Notwithstanding Plaintiff's condition as described above, by way of Aria's conduct toward Plaintiff, Aria was unjustly enriched to Plaintiff's detriment.

77. It is inequitable for Aria to retain Plaintiff's funds that were procured and retained in the circumstances described above.

78. Plaintiff has, by reason of the foregoing, been compelled to obtain the services of an attorney and is entitled to recover its reasonable attorneys' fees and costs from the Resorts.

### FIFTH CLAIM FOR RELIEF

**(Breach of the Implied Covenant of Good Faith and Fair Dealing Against Aria)**

79. Plaintiff incorporates by reference all preceding paragraphs of this complaint as though fully set forth herein.

80. In every contract or agreement, each party thereto makes an implied covenant of good faith and fair dealing to the other.

81. To the extent any of the agreements between Aria and Plaintiff are determined to be valid and enforceable, through their actions described above, Aria took advantage of Plaintiff's history of gaming play at the Casino.

82. During January 23 and 24, 2024, Aria's conduct in having Plaintiff enter into written agreements in furtherance of their past business dealings constitutes breaches of the covenant of good faith and fair dealing.

83. Aria's conduct is unfaithful to the purpose of such contracts or agreements, and inconsistent with Plaintiff's justified expectations thereof.

84. As a direct and proximate result of Aria's breaches of the implied covenant of good faith and fair dealing, Plaintiff has been damaged in an amount in excess of $75,000, the exact amount to be proven at the trial of this matter.

85. Plaintiff has, by reason of the foregoing, been compelled to obtain the services of an attorney and is entitled to recover their reasonable attorneys' fees and costs from the Resorts.

### SIXTH CLAIM FOR RELIEF

**(Malicious Prosecution Against Aria)**

86. Plaintiff incorporates by reference all preceding paragraphs of this complaint as though fully set forth herein.

87. Aria initiated criminal proceedings against Plaintiff by filing multiple complaint forms against Plaintiff with the Clark County District Attorney's Office, Bad Check Unit.

88. Aria lacked probable cause to submit these complaint forms against Plaintiff because Aria had no reasonable basis to believe that Plaintiff did not have sufficient funds to pay the ostensible markers or had committed any theft.

89. The majority of the ostensible markers were returned marked "Not Authorized," clearly demonstrating that Plaintiff disputed these markers.

90. Plaintiff attempted to resolve the issues with the ostensible markers with Aria multiple times, before and after Aria presented the markers to his bank for payment, clearly demonstrating his intent to pay Aria the amount (if any) rightfully owed.

91. Aria acted with malice by submitting the complaint forms despite Plaintiff's ongoing attempts to resolve the situation with Aria.

92. Instead of responding to Plaintiff's concerns, Aria stonewalled him.

93. Case No. 24-CR-097831 has now been dismissed by the State.

94. As a direct and proximate result of Aria's conduct, Plaintiff has been damaged in an amount in excess of $75,000, the exact amount to be proven at the trial of this matter.

95. Plaintiff has, by reason of the foregoing, been compelled to obtain the services of an attorney and is entitled to recover their reasonable attorneys' fees and costs from the Resorts.

## SEVENTH CLAIM FOR RELIEF

**(Respondeat Superior Against MGM)**

96. Plaintiff incorporates by reference all preceding paragraphs of this complaint as though fully set forth herein.

97. MGM is vicariously liable for any actions of its employees and/or agents.

98. To the extent MGM employed and/or supervised individuals at Aria that worked at the Casino, MGM is vicariously liable for their actions.

99. Upon information and belief, MGM's employees and/or agents were involved in the circumstances surrounding Plaintiff's incapacity and the markers.

100. Upon information and belief, these employees and/or agents were under MGM's control during this time.

101. Upon information and belief, MGM's employees and/or agents were acting within the course and scope of their employment.

102. As a direct and proximate result of MGM's conduct, Plaintiff has been damaged in an amount in excess of $75,000, the exact amount to be proven at the trial of this matter.

103. Plaintiff has, by reason of the foregoing, been compelled to obtain the services of an attorney and is entitled to recover their reasonable attorneys' fees and costs from the Resorts.

## JURY DEMAND

Pursuant to Fed. R. Civ. P. 38(b) and LR 38-1, Plaintiff demands a jury trial on all available matters in this action.

WHEREFORE, Plaintiff prays for the following:

1. For declaratory relief as set forth herein;

2. For a determination of liability in Plaintiff's favor and against Aria and MGM, jointly and severally, for all damages and remedies allowed by law as to each of his claims for relief including rescission, if necessary;

3. For pre-judgment and post-judgment interest, at the highest rate permitted by applicable law;

4. For all costs and expenses, including reasonable attorneys' fees, incurred by Plaintiff in connection with the commencement and prosecution of this action; and

5. For such other and further relief as the Court deems just and proper.

DATED this 11th of December, 2025.

**HUTCHISON & STEFFEN, PLLC**

*/s/ Shelby A. Dahl*

_____
Joseph R. Ganley (5643)
Christopher J. Lalli (5398)
Shelby A. Dahl (13856)

*Attorneys for Plaintiff Michael Thomson*