Lawrence J. Semenza, III, Esq., Bar No. 7174
Email: ljs@semenzarickard.com
Katie L. Cannata, Esq., Bar No. 14848
Email: klc@semenzarickard.com
SEMENZA RICKARD LAW
10161 Park Run Drive, Suite 150
Las Vegas, Nevada 89145
Telephone:  (702) 835-6803
Facsimile:   (702) 920-8669
*Attorneys for Defendants Aria Resort & Casino, LLC*
*& MGM Resorts International*

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| MICHAEL THOMSON,<br><br>      Plaintiff,<br><br>v.<br><br>ARIA RESORT & CASINO, LLC; MGM RESORTS INTERNATIONAL,<br><br>      Defendants. | Case No.   2:25-cv-02459-ART-BNW<br><br>**DEFENDANTS ARIA RESORT & CASINO, LLC & MGM RESORTS INTERNATIONAL'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT [ECF NO. 1]** |

Defendants Aria Resort & Casino, LLC ("Aria") and MGM Resorts International ("MGM Resorts") (together, "Defendants") hereby move to dismiss Plaintiff Michael Thomson's ("Plaintiff") Complaint [ECF No. 1] (the "Motion").

This Motion is made pursuant to Fed. R. Civ. P. 12(b)(6), the pleadings on file with the Court, the attached Memorandum of Points and Authorities and any additional argument of counsel the Court may consider.

DATED this 27th day of January, 2026.

                SEMENZA RICKARD LAW

                */s/ Lawrence J. Semenza, III*
                Lawrence J. Semenza, III, Esq., Bar No. 7174
                Katie L. Cannata, Esq., Bar No. 14848
                10161 Park Run Drive, Suite 150
                Las Vegas, Nevada 89145
                *Attorneys for Defendants Aria Resort & Casino, LLC*
                *& MGM Resorts International*

## MEMORANDUM OF POINTS AND AUTHORITES

### I. PLAINTIFF'S ALLEGATIONS

According to his Complaint, Plaintiff claims to be a long-standing patron of Aria's casino. (ECF No. 1, ¶ 15.) On January 23, 2024, Plaintiff alleges that he was staying as a guest at Aria's hotel, and during his stay, played blackjack in the casino's high-limit room. (*Id*. at ¶¶ 17-19. Plaintiff further alleges that he recalls leaving the high-limit room "around midnight" with "a few thousand dollars worth of chips . . . ." (*Id*. at ¶ 19.) The Complaint alleges that Plaintiff's next memory was waking up on the morning of January 24, 2024 (*i.e.* the following day) in Aria's security holding room. (*Id*. at ¶ 20.) Despite purportedly having no recollection of the events between his departure from the high-limit room and subsequently "waking up" in the security holding room, Plaintiff alleges that he was "detained by Casino security around 11 a.m. on January 24, 2024." (*Id*. at ¶ 22.) Specifically, Plaintiff claims that he was detained after he was found asleep in the Aria's Sky Suites lounge and allegedly "lashed out" at the security guards when approached. (*Id*. at ¶ 21.) Plaintiff further acknowledges that he was trespassed from Aria's property that same day. (*Id.* ¶ 23.)

Following his trespass, Plaintiff claims that he spoke with his host regarding his outstanding credit instruments (*i.e.* markers) and "asked for further details," which Aria purportedly did not provide. (*Id.* at ¶¶ 24-26.) Months later, on May 10, 2024, Plaintiff alleges that he received a call from his bank concerning eight (8) markers, totaling $75,000.00, that Aria had presented for payment. (*Id.* at ¶ 29.) Plaintiff further alleges that he instructed his bank to not pay the markers presented by Aria. (*Id.* at ¶ 30.)

Thereafter, Plaintiff alleges that Aria turned the outstanding markers over to the Clark County District Attorney's Office's Bad Check Unit (the "DA's Office"), which led to him being charged with drawing and passing a bad check without sufficient funds with intent to defraud, as well as theft (the "Criminal Action"). (*Id.* at ¶¶ 37-38.) The Complaint further alleges that Plaintiff was ultimately arrested on a warrant and subsequently ***voluntarily elected*** to pay restitution to Aria. (*Id.* at ¶¶ 39-40.) As the result of Plaintiff's agreement to pay restitution, the Criminal Action was later dismissed. (*Id.* at ¶ 40.)

2

1  Apparently unsatisfied with the outcome of the Criminal Action, Plaintiff now alleges that he may not have signed the markers at issue and/or was incapacitated at the time that they were executed.[1] (*Id.* at ¶¶ 44-45.) Plaintiff further speculates that he was "deliberately surreptitiously drugged on the night of January 23 or morning of January 24, 2024 . . . ." (*Id.* at ¶ 41.) The Complaint, however, does not allege how Plaintiff was allegedly "drugged," when he was drugged or by whom. (*See id.*)

On December 11, 2025, Plaintiff filed a Complaint against Aria and its parent company, MGM Resorts. (*Id.*) Plaintiff alleges claims for Declaratory Relief, Negligence, Deceptive Trade Practices, Unjust Enrichment, Breach of the Implied Covenant of Good Faith and Fair Dealing and Malicious Prosecution against Aria, as well as a Respondeat Superior claim against MGM Resorts. (*Id.*)

For the reasons set forth below, Plaintiff's Complaint must be dismissed. Among other things, Plaintiff's ratification of the credit instruments at issue proves fatal to his alleged claims. What's more, Plaintiff's claims against Defendants for Negligence, Deceptive Trade Practices, Malicious Prosecution and Respondeat Superior must be dismissed for independent reasons as well. Thus, Defendants respectfully request that the Court grant the instant Motion in its entirety.

## II. STANDARD OF REVIEW

Pursuant to Fed. R. Civ. P. 12(b)(6), a cause of action may be dismissed for failure to state a claim upon which relief may be granted. Dismissal for failure to state a claim is a question of law, *Jackson v. Southern California Gas Co.*, 881 F.2d 638, 641 (9th Cir. 1989), and is appropriate when a "plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Abramson v. Brownstein*, 897 F.2d 389, 391 (9th Cir. 1990) (quoting *Gibson v. United States*, 781 F.2d 1334, 1337 (9th Cir. 1986)).

To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) (quoting *Bell Atl.*

---
[1] It is unclear from the Complaint whether Plaintiff is attempting to (albeit, belatedly) contest only certain of the eight (8) credit instruments he executed on January 23-24, 2024. (*See* ECF No. 1.)

3

*Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974, 167 L. Ed. 2d 929 (2007)). While detailed factual allegations are not required, the complaint must set at least forth "more than an unadorned, the-defendant-unlawfully-harmed-me accusation," *Iqbal*, 129 S. Ct. at 1949, and may not merely state "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Twombly*, 550 U.S. at 555. Indeed, a plaintiff must demonstrate more than just the "sheer possibility that a defendant has acted unlawfully." *Iqbal*, 129 S. Ct. at 1949.

As such, the Court must engage in a "common sense," "context-specific" examination of the pleading to determine whether a complaint states a plausible claim for relief. *Id* at 1950; *see also Twombly*, 550 U.S. at 557, 570. The facts alleged must "raise a right to relief above the speculative level and the complaint must contain enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 555, 570. Where the well-pleaded facts set forth in the complaint do not permit a court to infer more than the "mere possibility of misconduct," the complaint has not shown that the pleader is entitled to relief, and the claims in the complaint must be dismissed. *See id*. at 555; *Neitzke v. Wiliams*, 490 U.S. 319, 327 (1989).

### III. ARGUMENT

#### A. Given Plaintiff's Ratification of the Credit Instruments, His Related Claims Fail as a Matter of Law

"Both credit applications and markers that permit patrons to draw against their casino credit lines with a promise to repay that amount may constitute a valid contract. *Cf. Las Vegas Sands, LLC v. Nehme*, 632 F.3d 526, 536-37 (9th Cir. 2011) (discussing a casino's obligations under a bilateral marker contract in Nevada); *see Morales v. Aria Resort & Casino, LLC*, 995 F. Supp. 2d 1176, 1181 (D. Nev. 2014) ("Moreover, both the credit application and the markers are contracts, under which Morales had a duty to pay.")."

Under Nevada law, "it must be shown that a man was incapable of exercising judgment, of understanding the proposed engagement, and of knowing what he was about when he entered into the contract, or else it would be held binding." *Seeley v. Goodwin*, 39 Nev. 315, 324, 156 P. 934,

937 (1916) (emphasis added); *see also Babcock v. Engel*, 58 Mont. 597, 194 P. 137 (1920) ("Intoxication must be so deep and excessive as to deprive one of his understanding. If intoxication is relied on as a defense, it must be to such a degree that the party who wishes to avoid his contract on this ground must have been deprived of his reason and understanding."). "[T]he capacity to contract involves a person's inability to understand the terms of an agreement, not his actual understanding. Capacity relates to the status of the person rather than to the circumstances surrounding the transaction." *General Motors v. Jackson*, 111 Nev. 1026, 1031, 900 P.2d 345, 349 (1995).

The Nevada Supreme Court has held that an incapacitated party "will be deemed to have ratified the contract ***unless within a reasonable time after becoming sober he takes steps to disaffirm it***." *Seeley*, 39 Nev. at 323, 156 P. at 936 (emphasis added). With regard to an intoxication defense, Nevada has adopted the standard set forth in the Restatement (Second) of Contracts, which states that "[o]n becoming sober, the intoxicated person ***must act promptly*** to disaffirm [the contract]." Restatement (Second) of Contracts § 16 cmt. C (emphasis added); *see also, e.g., LaBarbera v. Wynn Las Vegas, LLC*, 134 Nev. 393, 396, 422 P.3d 138, 141 (2018); *Stockmen's Guaranty Loan Co. v. Sanchez*, 194 P. 603, 605, 26 N.M. 499, 505 (1920) ("[A]ssuming that the appellant was incapacitated by drunkenness at the time of the execution of the [contract], he nevertheless ratified his act by the numerous subsequent acts of affirmance" after he was sober); *Mo. Pac. R.R. Co. v. Lely Dev. Corp.*, 86 S.W.3d 787, 792-93 (Tex. Ct. App. 2002) ("Any act inconsistent with an intent to avoid a contract has the effect of ratifying the contract.")

Ratification can either be express or implied from the course of conduct. 17A C.J.S. Contracts § 185. Ratification of a contract may be found under a variety of circumstances, such as "taking any material act inconsistent with the intent to avoid the contract, or recognizing the validity of the contract by acting upon it, performing under it, or affirmatively acknowledging it." *Id.*; Restatement (Second) of Contracts § 380 (1981) (stating that the power of a party to avoid a contract for incapacity is lost if "he manifests to the other party his intention to affirm it or acts with respect to anything that he has received in a manner inconsistent with disaffirmance."); *see*

5

*also id.* at cmt. b ("A party may manifest his intention to affirm by words or other conduct, including the exercise of dominion over what he has received in a manner inconsistent with avoidance of the contract.")

Here, the Complaint does not allege that Plaintiff ever disaffirmed the credit instruments at issue. (*See* ECF No. 1.) Rather, Plaintiff ***expressly acknowledges*** that he paid Aria restitution in the Criminal Action – thereby satisfying the amounts owed to Aria for the unpaid credit instruments (*i.e.* $75,000.00). (*Id.* at ¶¶ 39-40.) By voluntarily remitting those amounts to Aria, Plaintiff clearly and unequivocally ***ratified*** the credit instruments as a matter of law. *See Schmidt v. Shah*, 696 F. Supp. 2d 44, 63 (D.D.C. 2010) ("A party's power to avoid a contract . . . is lost if, after the circumstances that made the contract voidable have ceased to exist, the party 'manifests to the other party his intention to affirm it or acts with respect to anything that he has received in a manner inconsistent with disaffirmance.'") (quoting Restatement § 380); *Alexander v. Winters*, 3 Nev. 475, 49 P. 116, 119 (1897) ("[N]o person can accept and reject the same instrument.")

In return, any claims that are premised upon the invalidity and/or unenforceability of the credit instruments – or Plaintiff's related capacity to contract – fail. This includes Plaintiff's claims against Defendants for (1) Declaratory Relief, (2) Deceptive Trade Practices, (3) Unjust Enrichment, (4) Breach of the Implied Covenant of Good Faith and Fair Dealing, and (5) Malicious Prosecution.

First, by virtue of his ratification, Plaintiff is not entitled to the following judicial declarations sought in his Complaint: (1) he lacked capacity to contract upon signing the credit instruments; (2) he was unable to understand or act in a reasonable manner upon signing them; (3) he purportedly did not sign them and/or the credit instruments are "fraudulent;" and (4) the credit instruments are invalid or unenforceable and should be rescinded. (ECF No. 1, ¶ 55(c)-(g).) The same is true of Plaintiff's claim for Deceptive Trade Practices. That claim similarly fails in light of Plaintiff's ratification for one simple reason: the purported debt informing that claim was ***voluntarily*** paid to Aria by Plaintiff. As such, the issuance of those credit instruments could not have violated the Nevada Deceptive Trade Practices Act ("NDTPA") and/or constituted any form of consumer fraud. Further, as discussed below, the issuance of credit instruments by gaming

licensees to patrons does not constitute a consumer transaction for purposes of the Nevada Deceptive Trade Practices Act ("NDTPA"), and as such, Plaintiff's Deceptive Trade Practice claim fails for this reason as well.

Next, Plaintiff's Unjust Enrichment claim also fails by virtue of his ratification. The Complaint alleges that Aria was unjustly enriched by the credit instruments at issue – and Plaintiff's repayment of those credit instruments in the form of restitution. (*See id*. at ¶¶ 75-77.) Again, because Plaintiff satisfied the balance of the credit instruments (and in turn, ratified them), Aria ***could not*** have been unjustly enriched. What's more, by ratifying the credit instruments, Plaintiff confirmed that they were valid and enforceable agreements between himself and Aria. Under Nevada law, [a]n unjust enrichment claim cannot lie where an express written contract exists "because no agreement can be implied when there is an express agreement." *W. Charleston Lofts I, LLC v. R & O Const. Co.*, 915 F. Supp. 2d 1191, 1196 (D. Nev. 2013) (citing *Leasepartners Corp. v. Robert L. Brooks Trust Dated Nov. 12, 1975,* 113 Nev. 747, 942 P.2d 182, 187 (1997)).

Plaintiff's ratification proves equally fatal to his Breach of the Implied Covenant of Good Faith and Fair Dealing claim. The claim alleges that Aria's conduct was "unfaithful to the purpose of such contracts or agreements and inconsistent with Plaintiff's justified expectations thereof." (ECF No. 1, ¶ 83.) However, under Nevada law, a credit instrument constitutes a writing which evidences a gaming debt. *Nguyen v. State*, 116 Nev. 1171, 1175, 14 P.3d 515, 518 (2000) (holding a casino marker is a check under Nevada law, which evidences an enforceable gaming debt); *see Zoggolis v. Wynn Las Vegas, LLC,* 768 F.3d 919, 923 (9th Cir. 2014) (stating that markers are checks because "they provided for payment of a specific sum of money drawn from a bank on demand"). Credit instruments are payable on demand, "thus subjecting the [drawer] payor to a repayment obligation at the will of the payee." *Id.* at 1176, 14 P.3d at 518 (quotations and citation omitted).

The Complaint does not allege that Aria acted in any way inconsistent with the purpose of the credit instruments – or Plaintiff's expectations concerning the same. Plaintiff, who describes himself as having a "long-standing history of patronage" at Aria's casino, was well aware of the

terms of his credit instruments. Because Plaintiff ultimately ratified the credit instruments at issue, Aria did not breach – and could not have breached – the implied covenant of good faith and fair dealing by (1) presenting them to Plaintiff's bank for payment, and (2) informing the Clark County District Attorney's Bad Check Division of the credit instruments once they were returned unpaid. Indeed, Plaintiff's acknowledgement that he paid restitution to satisfy those credit instruments is indicative of his expectation that Aria was entitled to – and anticipated – payment of the debt.

Finally, Plaintiff's ratification of the credit instruments nullifies his purported Malicious Prosecution claim. Indeed, Plaintiff's claim is contingent upon Aria having no right to (1) seek payment of the credit instruments and/or (2) initiate bad check proceedings upon those instruments being returned unpaid. The fact that Plaintiff later ratified those contracts by remitting the full principal balance confirms that Aria did not act with malice upon submitting the credit instruments to the DA's Office for prosecution.[2]

Considering the foregoing, the majority of Plaintiff's claims collapse because of his ratification of the credit instruments at issue. Indeed, by *voluntarily* paying Aria restitution in the amount of the credit instruments (*i.e.* $75,000.00), Plaintiff unequivocally ratified them as a matter of law. In light of his ratification, Plaintiff *cannot* now bring claims that are contingent upon those instruments' unenforceability. By virtue of his own actions, Plaintiff has already deemed the credit instruments he executed with Aria as valid and enforceable. Thus, because Plaintiff's claims for (1) Declaratory Relief, (2) Deceptive Trade Practices, (3) Unjust Enrichment, (4) Breach of the Implied Covenant of Good Faith and Fair Dealing, and (5) Malicious Prosecution are premised upon the invalidity and/or unenforceability of the credit instruments, they must be dismissed.

  **B.**  <u>Plaintiff's Negligence Claim is Barred by the Economic Loss Doctrine</u>

By way of this action, Plaintiff seeks to recoup the $75,000.00 in restitution he willingly paid Aria for purposes of satisfying the credit instruments. Plaintiff's alleged economic losses,

---

[2] Plaintiff's Deceptive Trade Practice and Malicious Prosecution claims fail for independent reasons as well, as addressed in detail below.

however, are based in contract – **not** tort. Indeed, the credit instruments executed by Plaintiff constitute contracts between himself and Aria. *Desert Inn, Inc. v. Shack*, 809 F. Supp. 783, 786 (D. Nev. 1993); *see also* NRS 463.01467 (defining a credit instrument as "a writing which evidences a gaming debt owed to a person who holds a nonrestricted license at the time the debt is created. . . ."); *Morales v. Aria Resort & Casino, LLC,* 995 F. Supp. 2d 1176, 1180-1181 (D. Nev. 2014) (stating that a credit application and markers are contracts, under which a patron had a duty to pay). Put simply, because Plaintiff's alleged damages sound in contract – not tort – the economic loss doctrine prohibits his Negligence claim.

The economic loss doctrine generally "bars unintentional tort actions when the plaintiff seeks to recover 'purely economic losses.'" *Terracon Consultants W., Inc. v. Mandalay Resort Grp.,* 206 P.3d 81, 86 (Nev.2009); *see also Lombino v. Bank of Am., N.A.,* 797 F. Supp. 2d 1078, 1082 (D. Nev. 2011). Moreover, the doctrine "marks the fundamental boundary between contract law, which is designed to enforce the expectancy interests of the parties, and tort law, which imposes a duty of reasonable care and thereby encourages citizens to avoid causing physical harm to others." *Calloway v. City of Reno,* 116 Nev. 250, 256, 993 P.2d 1259 (2000) (citation omitted), *overruled on other grounds by Olson v. Richard,* 120 Nev. 240, 241–44, 89 P.3d 31 (2004). In the words of the United States Supreme Court, the economic loss doctrine exists to prevent contract law from drowning in a "sea of tort." *East River S.S. Corp. v. Transamerica Delaval,* 476 U.S. 858, 866, 106 S.Ct. 2295, 90 L.Ed.2d 865 (1986).

The purpose of the economic loss doctrine is to "shield a defendant from unlimited liability for all of the economic consequences of a negligent act, particularly in a commercial or professional setting, and thus to keep the risk of liability reasonably calculable." *Local Joint Executive Bd. of Las Vegas, Culinary Workers Union v. Stern,* 98 Nev. 409, 411, 651 P.2d 637 (1982). Thus, the "crux of the doctrine is ... the premise that economic interests are protected, if at all, by contract principles, rather than tort principles." *Calloway,* 116 Nev. at 260, 993 P.2d 1259 (citation omitted).

"The phrase 'economic loss' generally refers to **non-physical commercial losses** . . . in contrast to the injuries that have long been the central domain of tort law: physical injuries 'to the

plaintiff's person or property . . . .'" *In re ZF-TRW Airbag Control Units Prods. Liab. Litig.*, 601 F. Supp. 3d 625, 783 (C.D. Cal. 2022) (citing *Miller v. U.S. Steel Corp.*, 902 F.2d 573, 574 (7th Cir. 1990)) (emphasis added). The economic loss doctrine applies where a plaintiff has "suffered purely economic losses related to the contract, rather than, for instance, physical injuries" and in such instances "that person may not recover damages in tort." *CSX Transportation, Inc. v. Norfolk S. Ry. Co.,* No. 2:18CV530, 2019 WL 4564564, at *15 (E.D. Va. Sept. 9, 2019).

That is precisely the case here. As evidenced by the Complaint, Plaintiff does not allege any physical injuries and/or injury to his property. Rather, the only damages identified within the Complaint relate to the amount of his credit instruments (and the restitution he subsequently paid). Because Plaintiff's Negligence claim is solely premised upon his gambling losses (and subsequent restitution), it must be dismissed. *See Mehta v. Victoria Partners,* No. 221CV01493CDSVCF, 2022 WL 4017056, at *7 (D. Nev. Sept. 2, 2022) (dismissing negligence claim given that plaintiff sought to recover economic damages, specifically, gaming losses).

### C. Plaintiff Does Not Have a Viable Claim for Deceptive Trade Practices

#### 1. *A Gaming Licensee's Issuance of Credit Instruments Is Not Encompassed By the NDTPA*

A deceptive trade practices claim brought under NRS § 41.600(1) requires a party to plead "(1) an act of consumer fraud by the defendant [that] (2) caused (3) damage to the plaintiff." *Picus v. Wal-Mart Stores, Inc.*, 256 F.R.D. 651, 658 (D. Nev. 2009); *see also* NRS § 41.600(2)(e) (defining consumer fraud to include deceptive trade practices listed in NRS §§ 598.0915 to 598.0925). *Urb. Outfitters, Inc. v. Dermody Operating Co., LLC*, No. 321CV00109MMDCLB, 2022 WL 4134127, at *4 (D. Nev. Sept. 12, 2022).

Here, Plaintiff's Deceptive Trade Practice claim is premised upon Aria's issuance of credit. However, gambling transactions – including a licensee's issuance of credit – do not constitute deceptive trade practices under the NDTPA. In fact, pursuant to NRS 598.0955(a), "[t]he provisions of NRS 598.0903 to 598.0999, inclusive*, do not apply to … [c]onduct in compliance with the orders or rules of, or a statute administered by, a federal, state or local governmental agency."* (Emphasis added.) As this Court knows, Nevada law expressly permits a licensee to

10

issue and enforce credit instruments. As stated in NRS 463.368, a "credit instrument accepted on or after June 1, 1983, and the debt that the credit instrument represents are valid and may be enforced by legal process." *See also Morales v. Aria Resort & Casino, LLC,* 995 F.Supp.2d 1176, 1180–81 (D.Nev.2014) (stating that markers are "credit instruments," which "are valid and may be enforced by legal process.") (citing Nev. Rev. Stat. § 463.368(1); *In re Miller, 292 B.R. 409, 414* (9th Cir.BAP2003) (finding that a casino marker is a credit instrument pursuant to NRS § 463.368(1))). Further, the Nevada Supreme Court has held that casino markers are "checks" within the meaning of NRS § 205.130. *Nguyen v. State,* 14 P.3d 515, 518 (Nev.2000).

Aria's issuance of credit to Plaintiff – which was done in accordance with Nevada law – does not constitute a deceptive trade practice under the NTDPA. Indeed, Defendants are unaware of any controlling authorities that suggest that the NTDPA encompasses the extension of credit for gambling purposes. Moreover, there is not a single provision within the NTDPA indicating that the (1) extension of credit (*i.e.* a loan) constitutes a good or service thereunder, and/or (2) the issuance of credit instruments for gambling purposes constitutes a consumer transaction. *Gibilterra v. Aurora Loan Servs., LLC*, No. 2:12–CV–685 JCM (VCF), 2013 WL 4040820, *2 (D. Nev. Aug. 6, 2013) (stating that the NDTPA applies only to those who engage in the sale or lease of goods or services).

To illustrate, in *Anderson v. HSBC Bank Nevada, N.A.*, No. CV 09-04271 DDP (EX), 2009 WL 10671379, at *6 (C.D. Cal. Sept. 23, 2009), the court was tasked with determining whether the NDTPA encompassed the extension of consumer credit. The *Anderson* court concluded that it did not. *Id.* In doing so, the *Anderson* court noted that a majority of courts have concluded that the extension of credit does not amount to a sale or lease of goods or services for purposes of a deceptive trade practice claim. *Id.* (citing *Berry v. Am. Express Publ'g, Inc.*, 554 Cal. Rptr. 3d 91, 92 (Ct. App. 2007) (holding that the issuance of a credit card is not a transaction intended to result in the sale or lease of goods or services within the meaning of the California Consumer Legal Remedies Act); *Riverside Nat'l Bank v. Lewis*, 603 S.W.2d 169, 173-75 (Tex. 1980) (holding that the extension of credit is not a good or service); *Haeger v. Johnson*, 548 P.2d 532 (Or. Ct. App. 1976) (holding that the lending of money is not a sale of goods or services

within the meaning of Oregon's Unlawful Trade Practices Act); *see also e.g., Kiper v. BAC Home Loans Servicing, LP*, 884 F. Supp. 2d 561, 572 (S.D. Tex. 2012), *aff'd sub nom. Kiper v. BAC Home Loans Servicing, L.P.,* 534 F. App'x 266 (5th Cir. 2013) (stating that a person who seeks "only the extension of credit . . . and nothing more is not a consumer under the DTPA because the lending of money is not a good or service.") (Internal quotations omitted.)

Other courts have similarly declined to permit consumer fraud claims in the context of gambling transactions. To illustrate, in *Doug Grant, Inc. v. Greate Bay Casino Corp.,* 232 F.3d 173, 188 (3d Cir. 2000), the Third Circuit Court of Appeals found that New Jersey's consumer fraud act was inapplicable where "the other source or sources of regulation deal specifically, concretely, and pervasively with the particular activity, implying a legislative intent not to subject parties to multiple regulations that, as applied, will work at cross-purposes." *Id*. In doing so, the Third Circuit Court of Appeals upheld a district court's conclusion that New Jersey's extensive gambling regulations, and corresponding Casino Control Act, "precludes an action under the Consumer Fraud Act." *See Doug Grant, Inc. v. Greate Bay Casino Corp.,* 3 F. Supp. 2d 518, 537 (D.N.J. 1998), *aff'd as modified and remanded,* 232 F.3d 173 (3d Cir. 2000); *see also Antar v. Borgata Hotel Casino & Spa, LLC,* No. CV 22-05785, 2024 WL 1672280, at *1 (D.N.J. Jan. 31, 2024) (finding that a plaintiff's Consumer Fraud Act claim was unviable, given that it was based upon conduct regulated by New Jersey's Casino Control Act).

Because Plaintiff's Deceptive Trade Practice claim is premised upon Aria's extension of credit – which is ***not*** encompassed by the NDTPA – it fails as a matter of law and must be dismissed.

### 2. The Complaint Does Not Meet FRCP 9(b)'s Heightened Pleading Requirement for a Deceptive Trade Practice Claim

Rule 9(b) applies to claims that "sound in fraud" and "are 'based on a unified course of fraudulent conduct.'" *Motogolf.com, LLC v. Top Shelf Golf, LLC*, 528 F. Supp. 3d 1168, 1174 & n.3 (D. Nev. 2021) (quoting *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1104-05 (9th Cir. 2003)). A fraud claim under the NDTPA must meet the heightened pleading requirement under

Rule 9(b). *See Vess v. Ciba–Geigy Corp. USA*, 317 F.3d 1097, 1103 (9th Cir. 2003) (under Rule 9(b), the "circumstances of the fraud must be stated with particularity").

Rule 9(b) provides that when a party alleges fraud, the party must "state with particularity the circumstances constituting fraud," that is, "the who, what, when, where, and how of the misconduct charged." *Becerra v. Dr. Pepper/Seven Up, Inc.*, 945 F.3d 1225, 1228 (9th Cir. 2019) (citation omitted); *see also Depot, Inc. v. Caring for Montanans, Inc.*, 915 F.3d 643, 668 (9th Cir. 2019) (noting that "the complaint must include an account of the time, place, and specific content of the false representation as well as the identities of the parties to the misrepresentations") (citations and quotation marks omitted).

Here, Plaintiff's claim for Deceptive Trade Practices fails to meet FRCP 9(b)'s heightened pleading standard. Among other things, Plaintiff does not allege the who, when, why or how concerning his claim. (*See* ECF No. 1.) Rather, the Complaint merely alleges that "Aria" caused and/or knew of Plaintiff's purported condition and "entered into transactions with him (or for him)" on the evening/early morning in question – which is woefully insufficient. (*Id.* at ¶ 67.) What's more, Plaintiff similarly fails to allege ***how*** Defendants' purported conduct constitutes a deceptive trade practice under NRS Chapter 598. (*See id.*) As stated above, the Complaint does not identify the precise provisions of NRS Chapter 598 that allegedly inform Plaintiff's claim. Plaintiff also fails to cite any provision of NDTPA that is applicable to gambling transactions, and/or confirms that the extension of credit for gambling purposes constitutes a good or service covered by the NDTPA (it does not). Put simply, based upon the Complaint as drafted, Defendants cannot reasonably ascertain what portions of the NDTPA Plaintiff alleges were violated.

Accordingly, Plaintiff's Deceptive Trade Practices claim must be dismissed for this reason as well.

### D. Plaintiff's Claim for Malicious Prosecution Also Warrants Dismissal

To state a claim for Malicious Prosecution, Plaintiff must allege the following: "(1) want of probable cause to initiate the prior criminal proceeding; (2) malice; (3) termination of the prior criminal proceedings; and (4) damage." *LaMantia v. Redisi*, 118 Nev. 27, 30, 38 P.3d 877, 879

(2002). With regard to the claim's third element, "[a]n individual seeking to bring a malicious prosecution claim must generally establish that the prior proceedings terminated in such a manner as to indicate his innocence." *Awabdy v. City of Adelanto*, 368 F.3d 1062, 1068 (9th Cir. 2004) (citing *Lackner v. LaCroix,* 25 Cal.3d 747, 159 Cal.Rptr. 693, 602 P.2d 393, 394–96 (1979); *Jaffe v. Stone,* 18 Cal.2d 146, 114 P.2d 335, 338–39 (1941)).

"Similar to other terminations short of a complete trial on the merits, a dismissal in the interests of justice satisfies this requirement ***if it reflects the opinion of the prosecuting party or the court that the action lacked merit or would result in a decision in favor of the defendant***." *Id*. (citing *Minasian v. Sapse,* 80 Cal.App.3d 823, 145 Cal.Rptr. 829, 831–32 (1978); *Jackson v. Beckham,* 217 Cal.App.2d 264, 31 Cal.Rptr. 739, 742–43 (1963) (emphasis added); *see also Eells v. Rosenblum,* 36 Cal.App.4th 1848, 43 Cal.Rptr.2d 323, 326 (1995) ("[i]f the resolution of the underlying litigation leaves some doubt as to the defendant's innocence or liability, it is not a favorable termination, and bars that party from bringing a malicious prosecution action") (internal quotation and alteration marks omitted).

As noted above, Plaintiff's restitution payments prove fatal to this claim, given that it is centered upon Aria allegedly having no right to either initiate the bad check proceedings or receive payment for the unpaid credit instruments. Plaintiff's Malicious Prosecution claim, however, also fails given that he has not alleged – ***and cannot*** allege – that the Criminal Action resulted in a favorable termination. Indeed, the Complaint acknowledges that "Plaintiff agreed to pay restitution to eliminate the stress of having an opening pending criminal case against him and Case No. 24-CR-097831 was dismissed." (ECF No. 1, ¶ 40.) In other words, the Criminal Action was dismissed solely because Plaintiff agreed to pay restitution to Aria. Plaintiff does not allege that the Criminal Action was dismissed for any other basis – let alone that the dismissal indicated his innocence and/or that the charges brought against him lacked merit. As such, the foregoing dismissal – which resulted in Aria receiving restitution – was ***not*** a favorable termination for Plaintiff.

Because Plaintiff cannot allege an essential element of his Malicious Prosecution claim, it must be dismissed.

### E. Respondeat Superior Is Not a Standalone Cause of Action, and As Such, Plaintiff's Claim Must Be Dismissed

As the Court knows, the doctrine of respondeat superior (or vicarious liability) provides that employers are vicariously liable for the actions of their employees within the scope of employment. *Hillcrest Invs., Ltd. v. Robison*, No. 215CV01509GMNVCF, 2015 WL7573198, at *2 (D. Nev. Nov. 24, 2015). However, respondeat superior is a theory of liability, **not** an independent cause of action. *See id*. (citing *Fernandez v. Penske Truck Leasing Co., L.P.*, 2012 WL 1832571, at *1 n.1 (D. Nev. May 18, 2012)).

As such, Nevada courts often dismiss standalone claims for respondeat superior. *See id*. (dismissing respondeat superior cause of action); *Mitschke v. Gosal Trucking, LDS.*, No. 2:14-CV-1099 JCM VCF, 2014 WL 5307950, at *3 (D. Nev. Oct. 16, 2014) ("Because respondeat superior is a theory of liability rather than a cause of action, the court will dismiss plaintiff's sixth claim."); *Saavedra v. Las Vegas Metro. Police Dep't*, No. 2:11-CV-00613-RLH, 2012 WL1019159, at *4 (D. Nev. Mar. 26, 2012) ("The Court dismisses Plaintiffs' seventh claim for relief of respondeat superior because respondeat superior is not a cause of action, it is a method of imputing liability on one person (usually an employer) for the conduct of another (usually an employee)."); *Reynolds v. Cardenas Markets, Inc*., No. 2:15-CV-1151-GMN-GWF, 2016 WL107944, at *2 (D. Nev. Jan.8, 2016) (dismissing claim for respondeat superior with prejudice, given that the deficiency could not be corrected through amendment.).

Here, Plaintiff alleges a single claim against MGM Resorts for Respondeat Superior. In doing so, Plaintiff alleges MGM Resorts may have employed and/or supervised individuals at Aria who were "involved in the circumstances surrounding Plaintiff's [alleged] incapacity and the markers." (ECF No. 1, ¶¶ 98-99.) Setting aside Plaintiff's speculations concerning MGM Resorts' purported involvement with Aria employees, respondeat superior is **not** a proper standalone claim. Rather, because respondeat superior is a theory of liability – not an independent cause of action – Plaintiff's claim must be dismissed.

///

///

## IV. CONCLUSION

Based upon the foregoing, Defendants respectfully request that the Court grant the instant Motion in its entirety.

DATED this 27th day of January 2026.

                SEMENZA RICKARD LAW

                */s/ Lawrence J. Semenza, III*
                Lawrence J. Semenza, III, Esq., Bar No. 7174
                Katie L. Cannata, Esq., Bar No. 14848
                10161 Park Run Drive, Suite 150
                Las Vegas, Nevada 89145
                *Attorneys for Defendants Aria Resort & Casino, LLC*
                *& MGM Resorts International*

# CERTIFICATE OF SERVICE

I am employed by the law firm of Semenza Rickard Law in Clark County, Nevada. I am over the age of 18 and not a party to this action. The business address is 10161 Park Run Drive, Suite 150, Las Vegas, Nevada 89145.

I hereby certify that on the 27th day of January 2026, I served the document(s), described as:

**DEFENDANTS ARIA RESORT & CASINO, LLC & MGM RESORTS INTERNATIONAL'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT [ECF NO. 1]**

☒ by sending ☐ an original ☒ a true and correct copy of the above and foregoing:

☒ a. via **CM/ECF System** *(You must attach the "Notice of Electronic Filing", or list all persons and addresses and attach additional paper if necessary)*

**HUTCHISON & STEFFEN, PLLC**
Shelby A Dahl, Esq., sdahl@hutchlegal.com
Joseph R Ganley, Esq., jganley@hutchlegal.com
Christopher J. Lalli, Esq., clalli@hutchlegal.com
*Attorneys for Plaintiff Michael Thomson*

☐ b. **BY U.S. MAIL.** I deposited such envelope in the mail at Las Vegas, Nevada. The envelope(s) were mailed with postage thereon fully prepaid. I am readily familiar with Semenza Rickard Law's practice of collection and processing correspondence for mailing. Under that practice, documents are deposited with the U.S. Postal Service on the same day which is stated in the proof of service, with postage fully prepaid at Las Vegas, Nevada in the ordinary course of business. I am aware that on motion of party served, service is presumed invalid if the postal cancellation date or postage meter date is more than one day after the date stated in this proof of service.

☐ c. **BY PERSONAL SERVICE.**

☐ d. **BY DIRECT EMAIL.**

☐ e. **BY FACSIMILE TRANSMISSION.**

I declare under penalty of perjury that the foregoing is true and correct.

*/s/ Olivia A. Kelly*
An Employee of Semenza Rickard Law

17