Joseph R. Ganley (5643)
Christopher J. Lalli (5398)
Shelby A. Dahl (13856)
**HUTCHISON & STEFFEN, PLLC**
Peccole Professional Park
10080 West Alta Drive, Suite 200
Las Vegas, Nevada 89145
Telephone:     (702) 385-2500
Facsimile:      (702) 385-2086
jganley@hutchlegal.com
clalli@hutchlegal.com
sdahl@hutchlegal.com

*Attorneys for Plaintiff Michael Thomson*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| MICHAEL THOMSON,<br><br>　　　　　　Plaintiff,<br><br>v.<br><br>ARIA RESORT & CASINO, LLC and MGM RESORTS INTERNATIONAL,<br><br>　　　　　　Defendants. | Case No.: 2:25-cv-02459-ART-BNW<br><br>**PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS** |

Defendants' rote motion to dismiss fails on all fronts because plaintiff Michael Thomson's ("plaintiff" or "Mr. Thomson")) complaint supports each of his claims adequately and substantially under Nevada law against each defendant, Aria Resort & Casino, LLC ("Aria") and MGM Resorts International ("MGM" and together with Aria, "defendants"), jointly and separately. Despite extensive citation to the complaint, defendants have overlooked, unwittingly or not, its most key elements: Mr. Thomson has disputed the markers at issue for more than a year, Mr. Thomson actively rejected the markers by directing his bank not to pay them, and Mr. Thomson paid restitution to the defendants under the unbearable threat of a criminal prosecution that had already resulted in him being thrown into jail.

1    Defendants proffer their routine, tired narrative that Mr. Thomson is a disgruntled gambler challenging his losses long after the fact; they say that in all of these cases. This is their default character-assassination campaign whenever their unscrupulous behavior is challenged by their unfortunate victims. Yet this rote narrative will not prevail here because it does not comport with the underlying facts.

First, defendants have been on clear notice since the night the abuse happened – and for **almost two years** prior to this complaint filing – that Mr. Thomson disputed the manufactured markers and that he had *bona fide* disputes regarding the events of January 23 and 24, 2024. And second, he has vigorously contested any attempt by defendants to enforce the alleged credit instruments from those dates. Instead of addressing their contemptible wrongdoing, defendants instigated wrongful criminal proceedings against Mr. Thomson, with the ultimate leverage of the government imprimatur, which is suspect in itself and challenged by Mr. Thomson here.

Defendants' motion to dismiss, accordingly, should be denied in its entirety. In the alternative, Mr. Thomson should be granted an opportunity to amend his complaint to include any additional allegations deemed necessary by the Court.

## I.   FACTUAL AND PROCEDURAL BACKGROUND

On the night of January 23, 2024, Mr. Thomson was playing blackjack at the Aria in its high-limit room. *See* ECF No. 1 at ¶ 17. Plaintiff does not recall having any unpaid credit instruments ("markers") when he finished playing around midnight, intending to return to his hotel room. *Id.* at ¶18-19. Yet, when Mr. Thomson awoke the next morning, he found himself detained in the Aria security holding room with no further memories of that night. *Id.* at ¶ 20.

Mr. Thomson admits that he does not remember what took place between around midnight of January 23rd and around midday of January 24, 2024, but he does know that he did not voluntarily and knowingly consume too much alcohol or take any drugs that would make him incapacitated or forgetful and that he does not suffer from any medical condition that would cause such memory loss. He also knows now that:

- Defendants claim Mr. Thomson took out eighth markers totaling $75,000.00 on the morning of January 24, 2024.

- Mr. Thomson has no memory of taking out $75,000.00 worth of markers on the morning of January 24, 2024. *Id.* at ¶ 33.
- Even defendants' motion acknowledges that Mr. Thomson acted in a manner consistent with being completely incapacitated on January 23 or 24, 2024, *id.* at ¶¶ 21, 41, 42, which deductively Mr. Thomson knows was caused by third-party perpetrators.
- The signatures on most of the ostensible markers appear to be forgeries (only loosely resembling Mr. Thomson's signature, at best). *Id.* at ¶ 34.
- Because Mr. Thomson was incapacitated around midnight, he was incapable of knowingly and voluntarily executing the ostensible markers. *Id.* at ¶¶ 19, 35.
- As shown below, defendants refused to provide any details about the ostensible markers, and the details they did provide were often conflicting.

Under these circumstances, it is entirely reasonable for Mr. Thomson to allege that there was fraud involved in the markers at issue. And any lack of specific details in these allegations are excusable for obvious reasons: Mr. Thomson was completely incapacitated during the relevant timeframe. Nor is any lack of further detail harmful to defendants. They have been given an extremely limited temporal and geographic scope to work with — from approximately midnight to 11:00 am on January 24, 2024, within the Aria casino. Defendants obviously should have access to all relevant information from that time and place, without the need to unfairly demand additional details from Mr. Thomson. Moreover, they cannot surreptitiously drug their guest which would cause memory loss and then benefit from his lack of memory of additional details.

Returning to the morning of January 24, 2024, defendants did not mention any outstanding markers to Mr. Thomson that day. *Id.* at ¶ 25. It was not until later, when Aria's host stated to Mr. Thomson that he had outstanding markers, but even then there was a discrepancy in the amount at issue. *Id.* at ¶ 25. Defendants did not even have their story straight right out-of-the-gate. Over the next several months, Mr. Thomson expressed concerns

to his Aria host about the alleged outstanding markers, but defendants refused to provide any additional details, they just demanded blind fidelity and payment. *Id.* at ¶ 26.

Then, on May 10, 2024, Mr. Thomson received a call from his bank that $75,000.00 worth of ostensible markers had been submitted for payment by defendants. *Id.* at ¶ 29. Mr. Thomson **unequivocally rejected the ostensible markers** by instructing his bank not to pay them. *Id.* at ¶ 30. Defendants attempt to gloss over this critically important fact in their submission to this Court: as soon as Mr. Thomson was presented with the ostensible markers (rather than defendants' vague, unsupported comments about them), he took clear and swift action to reject them entirely.

And Mr. Thomson did not stop there. He again and again asked defendants for information to continue to investigate these markers, and defendants continually stonewalled him. *Id.* at ¶ 36. Instead of cooperating with Mr. Thomson so he could discover the truth of the matter, defendants turned the ostensible markers over to the Clark County District Attorney's Office, Bad Check Unit and filed several complaint forms against Mr. Thomson in their leveraged play to make him pay sight unseen. *Id.* at ¶ 37. Despite the manifest unfairness of this, Mr. Thomson agreed to pay restitution **solely** to eliminate the fear and stress of having an open, pending criminal case against him — one that had already resulted in him being arrested and thrown into jail without warning, entirely disrupting his life and leaving him feeling extremely insecure and frightened about the specter of further jail time or other painful consequences from the wrongful criminal case. *Id.* at ¶¶ 39-40. This payment could hardly be called "voluntary," as it was made under the coercion and duress of improper criminal proceedings. Mr. Thomson could not live his productive business life with the prospect of being whisked away to jail again at a moment's notice and no warning. That is incredibly stressful, disruptive, demeaning, and frightening. In addition, no evidence exists that Mr. Thomson ever admitted guilt, ratified the markers, or waived his right to challenge the markers in a subsequent civil proceeding. Nor would such evidence be appropriate for the Court's consideration at the motion to dismiss stage.

Now, Mr. Thomson has brought claims for Declaratory Relief, Negligence, Deceptive Trade Practices, Unjust Enrichment, Breach of the Implied Covenant of Good Faith and Fair Dealing and Malicious Prosecution against Aria, as well as a Respondeat Superior claim against MGM Resorts. *Id.* at ¶¶ 47-103. As discussed further below, Mr. Thomson has more than adequately alleged each claim under the Nevada pleading standard, and, accordingly, defendants' motion to dismiss should be denied in its entirety.

## II. LEGAL ARGUMENT

### A. Legal standard for motion to dismiss.

Unless another pleading standard applies, a complaint must satisfy the FRCP 8(a)(2) notice pleading standard to survive a FRCP 12 motion to dismiss for failure to state a claim. *See Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1102-1103 (9th Cir. 2008). Pursuant to FRCP 8(a)(2), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." [T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but … A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' … Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009), quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-557, 127 S. Ct. 1955, 1964–65, 167 L. Ed. 2d 929 (2007).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.*, quoting *Bell Atl. Corp.*, 550 U.S. at 570, 127 S.Ct. 1955. In evaluating a motion to dismiss, "All well-pleaded allegations of material fact in the complaint are accepted as true and are construed in the light most favorable to the nonmoving party." *Faulkner v. ADT Sec. Services, Inc.*, 706 F.3d 1017, 1019 (9th Cir. 2013). "A claim has facial plausibility when 'the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Id.,* quoting *Ashcroft*, 556 U.S. at 678, 129 S.Ct. 1937.

Under FRCP 9(b), "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." However, "where the facts necessary for pleading

fraud with particularity 'are peculiarly within the defendant's knowledge or are readily obtainable by him,' a court may apply a relaxed pleading standard." *Urb. Outfitters, Inc. v. Dermody Operating Co., LLC*, No. 3:21-cv-00109-MMD-CLB, 2022 WL 4134127, at *6 (D. Nev. Sept. 12, 2022), quoting *Rocker v. KPMG LLP*, 122 Nev. 1185, 1193, 148 P.3d 703, 708 (2006), *abrogated on other grounds by Buzz Stew, LLC v. City of N. Las Vegas*, 124 Nev. 224, 181 P.3d 670 (2008). The Court may allow limited discovery to file a more particular amended complaint, but "the plaintiff must: (1) plead sufficient facts to support a strong inference of fraud; (2) aver that a relaxed pleading standard is appropriate; and (3) show in the complaint that the claim cannot be pleaded with more particularity because the necessary information is in the defendant's possession." *Id.*

"Dismissal without leave to amend is improper unless it is clear, upon de novo review, that the complaint could not be saved by any amendment." *Gompper v. VISX, Inc.,* 298 F.3d 893, 898 (9th Cir.2002), quoting *Polich v. Burlington N., Inc.,* 942 F.2d 1467, 1472 (9th Cir.1991). This matches the FRCP's direction for Court's to "freely give leave" to amend "when justice so requires." FCRP 15(a)(2).

### B. Mr. Thomson did not ratify the credit instruments, or at the very least ratification is a question of fact.

Defendants assert that "the Complaint does not allege that Plaintiff ever disaffirmed the credit instruments at issue. … By voluntarily remitting those amounts to Aria, Plaintiff clearly and unequivocally ***ratified*** the credit instruments as a matter of law." *See* ECF No. 7 at 6:4-8. Defendants argue that because of this alleged ratification, Mr. Thomson's claims for Declaratory Relief, Deceptive Trade Practices, Unjust Enrichment, Breach of the Implied Covenant of Good Faith and Fair Dealing, and Malicious Prosecution must be dismissed. *Id.* at 6:14-18. Defendants are wrong on each and every point.

The complaint does allege, very conspicuously, that Mr. Thomson disaffirmed the markers at issue. From the time that defendants first told Mr. Thomson that there were outstanding markers (even before there were specific amounts or any particular details given), Mr. Thomson expressed his concerns and asked for additional details to investigate defendants'

1  claims. *See* ECF No. 1 at ¶ 26.  The first time Mr. Thomson was actually presented with the
2  specific details of the markers from his bank, Mr. Thomson **unequivocally rejected the**
3  **ostensible markers** by instructing his bank not to pay them. *Id.* at ¶ 30.  After this rejection,
4  Mr. Thomson continued to attempt to investigate these markers, once again demonstrating that
5  they were not going to be paid, *i.e.*, Mr. Thomson was rejecting them. *Id.* at ¶ 36.

6        "In order to constitute a repudiation, a party's act must be both voluntary and affirmative,
7  and must make it actually or apparently impossible for him to perform." Restatement (Second)
8  of Contracts § 250 (1981).  Mr. Thomson's actions in directing his bank not to pay the markers
9  was a voluntary, affirmative action that made it impossible for Mr. Thomson to perform under
10 the ostensible, fraudulent markers.  Thus, his actions repudiated the markers.  And, as
11 defendants themselves acknowledge, "[N]o person can accept and reject the same instrument."
12 *Alexander v. Winters*, 3 Nev. 475, 49 P. 116, 119 (1897).  "A person who avoids a transaction is
13 not entitled subsequently to affirm the transaction…" Restatement (First) of Restitution § 68
14 (1937), cited with approval by Restatement (Second) of Contracts § 380 (1981).  At the very
15 least, this creates a question of fact regarding the repudiation of the ostensible markers which
16 prevents dismissal on the grounds of ratification.

17       Defendants attempt to gloss over Mr. Thomson's clear rejection of the markers and go
18 straight to when Mr. Thomson was forced to pay defendants restitution, **due to an improper**
19 **criminal proceeding that had already resulted in Mr. Thomson's unexpected arrest and**
20 **detention.** *See* ECF No. 1 at ¶ 39-40.  Defendants cite no authority stating that actions taken to
21 resolve wrongfully-instituted criminal proceedings constitute voluntary actions that would serve
22 to ratify a disputed contract.  Common sense would say the opposite — actions taken under that
23 type of duress and coercion cannot be considered "voluntary."  What choice did he have lest he
24 be whisked away to jail again unexpectedly at a moment's notice?

25       Defendants appear to be making an argument based on a version of the voluntary
26 payment doctrine.

27
28

Page **7** of **14**

> The voluntary payment doctrine is an affirmative defense that "provides that one who makes a payment voluntarily cannot recover it on the ground that he was under no legal obligation to make the payment." *Best Buy Stores v. Benderson–Wainberg Assocs.,* 668 F.3d 1019, 1030 (8th Cir.2012) (internal quotations omitted). "The 'voluntary' in the voluntary payment doctrine does not entail the mere payment of the bill or fee." *Putnam v. Time Warner Cable of Se. Wis.,* 255 Wis.2d 447, 649 N.W.2d 626, 632 (2002). Instead, it considers "the willingness of a person to pay a bill *without protest as to its correctness or legality.*" *Id.* at 633.

*Nevada Ass'n Servs., Inc. v. Eighth Jud. Dist. Ct.*, 130 Nev. 949, 954, 338 P.3d 1250, 1253–54 (2014). The rub here is Mr. Thomson's payment was anything but voluntary. Nobody voluntarily "walks the plank." As already shown, Mr. Thomson vigorously protested the markers' correctness and legality from the outset; he never changed that position. Paying restitution solely to end a wrongful criminal action that could get him thrown back in jail was not a "voluntary" payment to defendants that in any way indicated Mr. Thomson accepted or ratified the markers.

Nor should ratification even be at issue in a motion to dismiss. Ratification is a question of fact, not purely of law. *See Georg v. Nevada Cent. R. Co.*, 22 Nev. 228, 38 P. 441, 443 (1894); *Kelly v. Provident Life & Acc. Ins.*, 245 F. App'x 637, 640 (9th Cir. 2007).

For these compelling reasons, defendants' motion to dismiss should be denied.

### C. Mr. Thomsons's negligence claim is not barred by the economic loss doctrine because it alleges physical harm.

Defendants' argument that Mr. Thomson's only damages are $75,000.00 relating to the ostensible markers because they arise from contract rather than tort fails under the economic loss doctrine because Mr. Thomson is not alleging only economic harm. There is also significant physical harm at issue.

"The Nevada Supreme Court made clear in *Calloway* that, as used in relation to the economic loss doctrine, "purely economic loss" is a term of art. … It does not refer to all economic loss, but only to economic loss that would be recoverable as damages in a normal contract suit." *Giles v. Gen. Motors Acceptance Corp.*, 494 F.3d 865, 877–78 (9th Cir. 2007).

Page **8** of **14**

> Purely economic loss has been defined as "the loss of the benefit of the user's bargain ... including ... pecuniary damage for inadequate value, the cost of repair and replacement of the defective product, or consequent loss of profits, without any claim of personal injury or damage to other property." *Calloway,* 116 Nev. at 257, 993 P.2d 1259 (citing *American Law of Products Liability* (3d) § 60:36, at 66).
>
> …
>
> Contract law seeks to enforce the expectancy interests created by the agreement between the parties and seeks to uphold standards of quality. *Id.* (citation omitted). Conversely, tort law is designed to secure the protection of all citizens from the dangers of physical harm to their persons or their property and seeks to uphold standards of conduct.

*Peri & Sons Farms, Inc. v. Jain Irr., Inc.,* 933 F. Supp. 2d 1279, 1283–84 (D. Nev. 2013).

Mr. Thomson does not only allege economic harm due to defendants' actions relating to the ostensible markers because defendants' misconduct and its effects run deeper than that. Specifically in his negligence cause of action, Mr. Thomson asserts that, "As a direct and proximate result of the foregoing breaches of duties, Plaintiff suffered, *inter alia,* physical confinement while at Aria, economic losses, and a wrongful arrest." *See* ECF No. 1 at ¶ 60. These are real claims and real consequences. They happened to him. They were extremely harmful to him. And they are actionable. Mr. Thomson seeks damages related to his wrongful physical confinement while at the Aria and his wrongful arrest, which were all due to defendants' negligence in how they treated Mr. Thomson while at the Aria and their actions in pursuing a criminal complaint against him. These are not damages based on a contract, they are damages based in tort and they are properly pleaded in tort.

Therefore, defendants' motion to dismiss should be denied.

**D.      Mr. Thomson has adequately pleaded a claim for deceptive trade practices.**

Defendants' two arguments against Mr. Thomson's deceptive trade practices claim – i.e., that issuing credit as part of a gaming transaction is not covered by the Nevada Deceptive Trade Practices Act ("NDTPA") and that Mr. Thomson's complaint does not meet the heightened

pleading requirements for a fraud-based claim – fail fully on both counts.

Indeed, MGM has made this same argument regarding the NDTPA's application to markers before the Court, and was resoundingly rejected.

> Defendants seek dismissal of Manley's NDTPA claim because the statute itself does not govern Defendants' alleged actions.
>
> First, they argue that the NDTPA is inapplicable because gambling-related credit instruments—here, Defendants' extensions of credit to Manley, evidenced by TTO requests and markers—are not "consumer goods or services" underlying "deceptive trade practices." (ECF No. 9 at 8-9.) This argument is unpersuasive. While casino markers are contractually enforceable as credit instruments under Nevada law, *see Zoggolis v. Wynn Las Vegas, LLC*, 768 F.3d 919, 923-24 (9th Cir. 2014); *Morales v. Aria Resort & Casino, LLC*, 995 F. Supp. 2d 1176, 1180-81 (D. Nev. 2014), Defendants cite no authorities addressing whether the NDPTA encompasses extensions of credit for gambling purposes as consumer goods or services. Without such authorities, and in viewing the facts and drawing inferences in Manley's favor, the Court assumes at this stage that markers and other gambling-related credit instruments are consumer goods or services to which the NDTPA applies.

*Manley v. MGM Resorts Int'l*, No. 2:22-CV-01906-MMD-DJA, 2023 WL 3737509, at *5 (D. Nev. May 30, 2023).

It is hard to get legal authority that is more on point. And defendants have failed to provide any additional authority in this case addressing whether the NDPTA encompasses extensions of credit for gambling purposes. As in *Manley*, at this early stage in the case and without any authority justifying dismissal, the Court should deny defendants' motion.

In addition, the Court should find that Mr. Thomson has adequately pleaded his NDTPA claim. Though defendants argue the complaint does not contain sufficient detail, Mr. Thomson has provided more than enough detail for defendants to understand, respond to, and defend themselves against the allegations in this case. Mr. Thomson has alleged that defendants engaged in unfair and deceptive trade practices by "knowingly taking advantage of Plaintiff's intoxicated condition and entering into transactions with him (or for him) for significant amounts of money." *See* ECF No. 1 at ¶ 67.

> 68. More specifically, Aria caused and/or was aware of Plaintiff's condition and, instead of taking action to allow him to obtain medical treatment and/or to fulfill its duty to promote and effectuate responsible gaming, Aria allowed him to ostensibly agree to $75,000.00 in ostensible markers, all but ensuring Aria's opportunity to obtain additional monies from Plaintiff.
>
> 69. In the alternative, Aria accepted ostensible markers with forged signatures and did not verify that the ostensible markers were signed by Plaintiff.

*Id.* at ¶¶ 68-69.  In conjunction with the other allegations limiting the time and place at issue to approximately midnight to 11:00 am on January 24, 2024 within the Aria casino (*id.* at ¶¶ 19-20, 22), this sufficiently states "with particularity the circumstances constituting fraud or mistake." FRCP 9(b).  In addition, no requirement exists in FRCP 9(b) or elsewhere requiring that Mr. Thomson pleads a specific statutory subsection of the NDTPA in his complaint.

Even if additional information was necessary under FRCP 9(b), which it is not, it is unavailable to Mr. Thomson at this time.  This information is peculiarly within the defendants' knowledge and access.  Mr. Thomson was so incapacitated by them that he has no knowledge of what took place during this timeframe.  *See* ECF No. 1 at ¶¶ 19-22.  Defendants, on the other hand, have access to all the relevant information from that timeframe, such as video surveillance, employee statements, witness identification, business records, and the like.  Mr. Thomson has asked defendants for information numerous times and has been rejected each time.  *Id.* at ¶¶ 26, 30, 36.  Defendants cannot hide that information from Mr. Thomson and then try to benefit from that illicit behavior in this pleading stage.  The circumstances in this case support a strong inference of fraud, so a relaxed pleading standard is appropriate.  *Urb. Outfitters, Inc. v. Dermody Operating Co., LLC*, No. 3:21-cv-00109-MMD-CLB, 2022 WL 4134127, at *6 (D. Nev. Sept. 12, 2022).

Therefore, defendants' motion to dismiss should be denied.  In the alternative, the motion should be granted with leave to amend so Mr. Thomson can include additional allegations to satisfy the applicable heightened pleading standard.

**E.    Mr. Thomson has adequately pleaded a claim for malicious prosecution.**

Defendants argue that to support a malicious prosecution claim, the plaintiff "must generally establish that the prior proceedings terminated in such a manner as to indicate his innocence." *See* ECF No. 7 at 14: 2-3, quoting *Awabdy v. City of Adelanto*, 368 F.3d 1062, 1068 (9th Cir. 2004). However, the law is not as settled as defendants present it to be.

Defendants cite only federal and state cases from California on this issue. *Id.* at 14:3-14. And they do so because this is an unsettled issue of law in Nevada. *See Manansingh v. United States*, No. 2:20-CV-01139-DWM, 2024 WL 1638638, at *6-8 (D. Nev. Apr. 15, 2024). Some cases have held that merely the lack of a conviction will support a malicious prosecution claim. *Id.* While the Court in *Manansingh* ultimately ruled that favorable termination must reflect the merits of the action and plaintiff's innocence of the misconduct, Mr. Thomson would argue that a more lenient standard is appropriate in this case. Nevada courts have previously listed more lenient requirements, not mentioning a particular "favorable" termination: "The elements of malicious prosecution, arising from termination of the criminal prosecution, are (1) want of probable cause, (2) malice, (3) termination of litigation, and (4) damage." *Chapman v. City of Reno*, 85 Nev. 365, 369, 455 P.2d 618, 620 (1969). Since the criminal case against Mr. Thomson was terminated without a conviction, the dismissal should be sufficient to support a malicious prosecution claim.

Therefore, defendants' motion to dismiss should be denied.

**F.    Nevada recognizes respondeat superior as a standalone cause of action.**

Defendants argue that respondeat superior is a theory of liability rather than an independent cause of action, but they are incorrect here as well.

Nevada recognizes respondeat superior as a separate, standalone cause of action. *See Pina v. United States ex rel. United States Postal Serv.*, No. 2:22-cv-01946-ART-VCF, 2023 WL 5717290, at *2 (D. Nev. Sept. 1, 2023); *Gonzalez v. Nevada Dep't of Corr.*, No. 2:12-CV-02143-RFB, 2015 WL 4711108, at *7 (D. Nev. Aug. 6, 2015); *Bielicki v. USAA Cas. Ins. Co.*, No. 2:23-CV-01362-CDS-EJY, 2024 WL 3104576, at *7 (D. Nev. June 24, 2024). Federal courts may still dismiss Nevada respondeat superior claims as being duplicative, out of

convenience, or by relying on cases that grant dismissals simply because other cases have done so in the past, but this is improper. Mr. Thomson has properly pleaded a respondeat superior claim that is recognized under Nevada law, and defendants have given no other reason to dismiss this claim.

Therefore, the motion to dismiss should be denied. In the alternative, the motion should be granted with leave to amend so Mr. Thomson can include MGM as a defendant in all of its claims based on a respondeat superior theory of liability.

### III.  CONCLUSION

For all the reasons discussed above, defendants' motion to dismiss should be denied in full. Defendants prematurely raise factual issues that cannot be addressed by the Court at this time and they miscite or misapply the proper legal standards in several instances. In the alternative, Mr. Thomson should be granted an opportunity to amend his complaint to include any additional allegations deemed necessary by the Court.

DATED this 10th of February, 2026.

**HUTCHISON & STEFFEN, PLLC**

*/s/ Shelby A. Dahl*

_____
Joseph R. Ganley (5643)
Christopher J. Lalli (5398)
Shelby A. Dahl (13856)

*Attorneys for Plaintiff Michael Thomson*

## CERTIFICATE OF SERVICE

Pursuant to FRCP 5(b), I certify that I am an employee of Hutchison & Steffen, PLLC and that on this 10th day of February, 2026, I caused the above and foregoing documents entitled **PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS** to be served via the Court's CM/ECF electronic system on each of the following:

| | |
|---|---|
| Joseph R. Ganley<br>Christopher J. Lalli<br>Shelby A. Dahl<br>HUTCHISON & STEFFEN PLLC<br>10080 W. Alta Dr. #200<br>Las Vegas NV 89145<br><br>*Attorneys for Plaintiff*<br>*Michael Thomson* | Katie Lynn Cannata<br>Lawrence J. Semenza III<br>SEMENZA RICKARD LAW<br>10161 Park Run Dr. #150<br>Las Vegas NV 89145<br><br>*Attorneys for Defendants*<br>*Aria Resorts & Casino and MGM Resorts International* |

*/s/ Suzanne Morehead*

An employee of Hutchison & Steffen, PLLC