Lawrence J. Semenza, III, Esq., Bar No. 7174
Email: ljs@semenzarickard.com
Katie L. Cannata, Esq., Bar No. 14848
Email: klc@semenzarickard.com
SEMENZA RICKARD LAW
10161 Park Run Drive, Suite 150
Las Vegas, Nevada 89145
Telephone: (702) 835-6803
Facsimile: (702) 920-8669
*Attorneys for Defendants Aria Resort & Casino, LLC
& MGM Resorts International*

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| MICHAEL THOMSON,<br><br>　　　　　　　Plaintiff,<br><br>v.<br><br>ARIA RESORT & CASINO, LLC; MGM RESORTS INTERNATIONAL,<br><br>　　　　　　　Defendants. | Case No. 2:25-cv-02459-ART-BNW<br><br>**DEFENDANTS ARIA RESORT & CASINO, LLC & MGM RESORTS INTERNATIONAL'S REPLY IN SUPPORT OF MOTION TO DISMISS [ECF NO. 7] PLAINTIFF'S COMPLAINT [ECF NO. 1]** |

**I.    INTRODUCTION**

Plaintiff Michael Thomson's ("Plaintiff") Complaint [ECF No. 1] must be dismissed in its entirety. First, and as confirmed by the Complaint, Plaintiff ratified his credit instruments with Defendant Aria Resort & Casino ("Aria"). While the Response claims that Plaintiff requested additional information concerning those credit instruments – the foregoing alone does ***not*** constitute disaffirmance. Rather, Plaintiff's agreement to pay restitution to Aria to satisfy those credit instruments clearly constitutes ratification as a matter of law. As a result, each of Plaintiff's claims alleged in this action – all of which are premised upon those credit instruments' purported unenforceability or Plaintiff's lack of capacity to contract – fail for this reason alone.

Next, Plaintiff's Negligence claim is barred by the economic loss doctrine. Indeed, Plaintiff's allegations of duty and breach are tied entirely to Aria's extension of credit and purported regulatory obligations. What's more, the Complaint fails to allege ***any*** physical injury

and/or property damage – and instead – only asserts financial losses stemming from the credit instruments and related payments. Such losses are contractual and are ***not*** based in tort. As such, Plaintiff's claim for Negligence warrants dismissal.

In addition to Plaintiff's ratification of the credit instruments at issue, his Deceptive Trade Practice claim fails for independent reasons as well. As a threshold matter, the extension of casino credit is not the sale or lease of goods or services as contemplated by the Nevada Deceptive Trade Practice Act ("NDTPA"). Put differently, Plaintiff cannot premise a deceptive trade practice claim upon the credit instruments at issue, and as such, his claim fails. Moreover, Plaintiff's claim also fails to satisfy FRCP 9(b)'s heightened pleading standard. Among other reasons, the Complaint does not identify the specific statutory provision allegedly violated, nor does it plead the who, what, when, where, and how of any purported fraudulent conduct. Therefore, Plaintiff's claim for Deceptive Trade Practices must also be dismissed.

The same is true of Plaintiff's claim for Malicious Prosecution. Plaintiff cannot state a viable claim for Malicious Prosecution because he did not obtain a favorable termination of the underlying criminal proceeding. Instead, the Complaint admits that the criminal action was dismissed only after Plaintiff agreed to pay restitution. A dismissal pursuant to compromise does not constitute a favorable termination under Nevada law. Thus, this claim also warrants dismissal as a matter of law.

Finally, the Respondeat Superior claim against Defendant MGM Resorts International ("MGM Resorts") must be dismissed. As stated in the Motion, respondeat superior is a theory of liability – not an independent cause of action. Moreover, Plaintiff has not alleged tortious conduct by an MGM Resort employee that would give rise to such liability, nor has he alleged a basis to hold a parent company (MGM Resorts) vicariously liable for the acts of its subsidiary (Aria).

For these reasons, and those discussed below, the Court must grant Defendants' Motion in its entirety.

///

///

## II. ARGUMENT

### A. Notwithstanding Plaintiff's Insistence to the Contrary, the Complaint Clearly Concedes That He Ratified the Credit Instruments at Issue

The power of a party to avoid a contract for incapacity is lost if "he manifests to the other party his intention to affirm it *or acts with respect to anything that he has received in a manner inconsistent with disaffirmance*." *See* Restatement (Second) of Contracts § 380 (1981) (emphasis added); 17A C.J.S. Contracts § 185 (stating that ratification of a contract may be found under a variety of circumstances, such as "***taking any material act inconsistent with the intent to avoid the contract***, or recognizing the validity of the contract by acting upon it, performing under it, or affirmatively acknowledging it.") (Emphasis added.)  Importantly, "[o]nce a party ratifies a contract, it may not later withdraw its ratification and seek to avoid the contract." *Mo. Pac. R.R. Co. v. Lely Dev. Corp.*, 86 S.W.3d 787, 792-93 (Tex. Ct. App. 2002); *Techs. Consultants, Inc. v. Pilkington PLC*, 137 F.3d 1382, 1391 (9th Cir. 1998) (finding ratification where alleged victim failed to claim voidability until filing the lawsuit).

As stated in Defendants' Motion, the Complaint acknowledges that Plaintiff ratified the credit instruments at issue as a matter of law.  Specifically, the Complaint states that Plaintiff agreed to pay restitution to Aria. (ECF No. 1, ¶ 40.)  By satisfying the amounts owed to Aria for the unpaid credit instruments (i.e. $75,000.00), Plaintiff ***unequivocally*** ratified those contracts. *Mo. Pac. R.R. Co. v. Lely Dev. Corp.*, 86 S.W.3d 787, 792-93 (Tex. Ct. App. 2002) ("Any act inconsistent with an intent to avoid a contract has the effect of ratifying the contract.")  Now, however, Plaintiff is attempting to challenge the validity and/or enforceability of those credit instruments by way of the instant lawsuit.  He is not permitted to do so.

Nevertheless, the Response claims that because Plaintiff did not "voluntarily" pay restitution, he did not ratify the credit instruments.  The Complaint, however, tells a different story.  Plaintiff alleges that he agreed to pay restitution to Aria "to eliminate the stress of having an open, pending criminal case against him . . . ." (ECF No. 1, ¶ 40.)  In other words, Plaintiff voluntarily agreed to remit restitution to – apparently – give himself peace of mind.  Regardless of his motivation for voluntarily satisfying the credit instruments at issue, there is simply ***nothing***

3

alleged in the Complaint that would indicate that his decision to do so was made under "coercion and duress" as he now claims in his Response. (ECF No. 9, 4:20-22.) The same is true of Plaintiff's allegation that the Criminal Action was "wrongfully instituted" – and therefore – his restitution payments did not ratify the credit instruments. They absolutely did.

Moreover, Plaintiff's claim that he "repudiated" the credit instruments is equally unavailing. The Complaint does not allege that Plaintiff ever disaffirmed his credit instruments – or his underlying debt – with Aria. His allegations of requesting additional information from Aria – and instructing his bank not to pay the credit instruments[1] – does **not** constitute disaffirmance. Instead, after the credit instruments were sent to Clark County District Attorney's Office's Bad Check Unit – and the Criminal Action was initiated – Plaintiff took affirmative steps to **ratify** those contracts as set forth above (*i.e.* by paying restitution). Indeed, there is simply no question that Plaintiff's remittance of restitution was a material act **wholly** inconsistent with any intent to disaffirm the credit instruments as a matter of law. *Alexander v. Winters*, 3 Nev. 475, 49 P. 116, 119 (1897) ("[N]o person can accept and reject the same instrument.")

By virtue of his ratification, the claims asserted in this action (all of which are premised upon the invalidity and/or unenforceability of the credit instruments or Plaintiff's related capacity to contract) must be dismissed. Indeed, a ruling to the contrary would condone Plaintiff's clear attempt to end run around his agreement to pay Aria in the Criminal Action. Put differently, while Plaintiff agreed to pay restitution to Aria for purposes of receiving a dismissal of that action, he is now attempting to **unwind** that very settlement by way of the instant lawsuit, in which he seeks to recoup – at a minimum – the amount of paid restitution. He cannot be permitted to do so. The foregoing would undermine the DA Office's resolution of the Criminal Action against Plaintiff – and negate the basis for that action's dismissal – would run contrary to public policy.[2]

---

[1] Indeed, for disaffirmance to occur, it must be clearly and promptly made to the other contracting party – **not** a third party.

[2] This is because restitution serves penal purposes beyond mere compensation. *See e.g., United States v. Hankins*, 858 F.3d 1273, 1279 (9th Cir. 2017) (citing *United States v. Rich*, 603 F.3d 722, 729 (9th Cir.

For these reasons, Plaintiff's Complaint must be dismissed in its entirety.

## B. Plaintiff's Negligence Claim is Barred by the Economic Loss Doctrine

Plaintiff insists that his Negligence claim is not barred by the economic loss doctrine, given that he was purportedly "physically confined" on the date of the incident. (ECF No. 9, 9:14-18.) The foregoing, however, is belied by allegations presented in support of his Negligence claim. Specifically, the Complaint alleges that (1) "Aria has a duty of care toward Plaintiff as an invited guest in the Casino as well as duties to Plaintiff as a gaming patron pursuant to Nevada Gaming Regulations," and (2) "[b]y its conduct described in more detail above, Aria violated its duties to Plaintiff by causing and/or refusing to properly address Plaintiff's incapacitated state while concurrently extending credit." (ECF No. 1, ¶¶ 58-59.)

As evidenced by the Complaint, Plaintiff's Negligence claim is ***clearly*** premised upon the underlying credit instruments. Indeed, in attempting to allege both duty and breach, Plaintiff cites to Aria's purported duty under gaming regulations and its extension of credit. He does not, however, allege that Aria somehow breached a duty of care by way of his physical confinement. Moreover, the Complaint similarly does not allege ***physical injuries*** to his person or property. *See In re ZF-TRW Airbag Control Units Prods. Liab. Litig.,* 601 F. Supp. 3d 625, 783 (C.D. Cal. 2022). Among other things, Plaintiff does not allege that he sustained any physical injury while he was purportedly "physically confined" at Aria's property. Moreover, the Response similarly fails to allege any physical injury to either Plaintiff or his property that would save his Negligence claim from dismissal. (*See* ECF No. 9.)

Without such injury, Plaintiff's Complaint is solely premised upon the economic losses he purportedly incurred as a result of the credit instruments at issue (and his related payments). Those losses, however, are contractual in nature and ***do not*** sound in tort. Accordingly, Plaintiff's Negligence claim must be dismissed pursuant to the economic loss doctrine.

///

---

2010) (stating that "we have held repeatedly that restitution payments have both compensatory and penal purposes.")

5

### C.     Plaintiff's Claim for Deceptive Trade Practices Warrants Dismissal

#### 1. *The NDTPA Does Not Encompass Credit Issued by Gaming Licensees*

As discussed in Defendants' Motion, the gaming industry in Nevada is heavily regulated and overseen by the Nevada Gaming Control Board and Gaming Commission. *See e.g.,* NRS Ch. 463-465. Among other things, a licensee's issuance of credit is permitted by – and subject to – Nevada's gaming regulatory framework. *See* NRS 463.368. The foregoing is precisely why the issuance of casino credit is **not** encompassed by the NDTPA. Indeed, as stated in the NDTPA, "[t]he provisions of NRS 598.0903 to 598.0999, inclusive, ***do not apply*** to … [c]onduct in compliance with the orders or rules of, or a statute administered by, a federal, state or local governmental agency." (Emphasis added.) Because the Nevada Gaming Control Board, and Nevada's Gaming Control Act, clearly regulate and control casinos' extensions of credit to patrons[3], permitting plaintiffs to proceed with consumer fraud claims against casinos regarding their extension of credit would conflict with Nevada's longstanding gaming regulatory scheme.

Nevertheless, the Response claims that Defendants have not proffered any "authority in this case addressing whether the NDPTA [sic] encompasses extensions of credit for gambling purposes." (ECF No. 9, 10:17-18.) Specifically, the Response cites a separate matter, *Manley v. MGM Resorts Int'l*, No. 2:22-CV-01906-MMD-DJA, 2023 WL 3737509, at *5 (D.Nev. May 30, 2023), in support of Plaintiff's argument that the NDTPA encompasses the issuance of credit by casinos. The cited decision in *Manley,* however, did not conclude that issue one way or the other and is otherwise not binding on the instant dispute. Moreover as set forth in the Motion, there are a number of authorities that confirm that the NDTPA does ***not*** apply to a gaming licensee's extension of credit. Tellingly, Plaintiff all but ignores the cases cited in Defendants' Motion. The explanation for that is straightforward: Plaintiff is without any authority stating anything to the contrary, *i.e.* that the NDTPA does encompass the extension of casino credit (because it does not).

As stated in the Motion, the case of *Anderson v. HSBC Bank Nevada*, N.A., No. CV 09-04271 DDP (EX), 2009 WL 10671379, at *6 (C.D. Cal. Sept. 23, 2009) stands for the premise

---

[3] *See e.g.,* Nev. Gam. Reg. 5.140, 5.255 and 6.020.

6

that the NDTPA does ***not*** encompass consumer credit, given that the extension of credit does not amount to the sale or lease of goods or services. *Id.* The same is equally true of credit instruments, which are requested and executed by patrons for the purpose of gambling at licensee's casinos. Thus, just as the issuance of a credit card would not constitute a good or service for purposes of a deceptive trade practices claim, the issuance of credit instruments does not either. *See id.* (citing *Berry v. Am. Express Publ'g, Inc.*, 554 Cal. Rptr. 3d 91, 92 (Ct. App. 2007) (holding that the issuance of a credit card is not a transaction intended to result in the sale or lease of goods or services); *Kiper v. BAC Home Loans Servicing, L.P.*, 534 F. App'x 266 (5th Cir. 2013) (noting that a person seeking "the extension of credit . . . and nothing more is not a consumer under the DTPA because the lending of money is not a good or service.") (Internal quotations omitted.)[4]

For this reason alone, Plaintiff's Deceptive Trade Practice claim fails as a matter of law and must be dismissed.

### 2. *Even If Plaintiff Could State a Deceptive Trade Practice Claim (He Cannot), the Complaint Fails to Meet FRCP 9(b)'s Heightened Pleading Standard*

As set forth in the Motion, a deceptive trade practice claim brought under the NDTPA must meet FRCP 9(b)'s heightened pleading standard, given that such claims sound in fraud. *Motogolf.com, LLC v. Top Shelf Golf, LLC*, 528 F. Supp. 3d 1168, 1174 & n.3 (D. Nev. 2021) (quoting *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1104-05 (9th Cir. 2003)). On its face, Plaintiff's Deceptive Trade Practice claim falls far short of meeting that standard, which requires the circumstances constituting the fraud (*i.e.* the who, what, when, where, and how) to be pled with particularity. *Becerra v. Dr. Pepper/Seven Up, Inc.*, 945 F.3d 1225, 1228 (9th Cir. 2019). Nevertheless, Plaintiff claims that (1) his Complaint satisfies FRCP 9(b)'s heighted pleading requirement, or alternatively, (2) that a "relaxed pleading standard is appropriate." (*See* ECF No. 9, 10:21-11:24.)

---

[4] In addition, pursuant to NRS 598.0955(a), "[t]he provisions of NRS 598.0903 to 598.0999, inclusive, do not apply to … [c]onduct in compliance with the orders or rules of, or a statute administered by, a federal, state or local governmental agency." The foregoing would include licensee's issuance of credit, which is done in compliance with – and subject to – Nevada Gaming Regulations.

On its face, the Complaint clearly fails to allege deceptive trade practices with requisite detail pursuant to FRCP 9(b). Again, Plaintiff merely alleges that "Aria" caused and/or knew of his purported condition and "entered into transactions with him (or for him)" on the date of the incident. (ECF No. 1, ¶ 67.) Without more, the foregoing is wholly insufficient. In fact, his Deceptive Trade Practice claim is so threadbare that Plaintiff fails to even identify **which** provision of NRS Chapter 598 he purportedly relies upon.

Moreover, while Plaintiff (alternatively) maintains that a "relaxed" pleading standard should apply to his claim, he has failed to justify that request. Indeed, Plaintiff has not (1) pled sufficient facts to even suggest fraud on the part of Aria, and (2) does not allege in the Complaint that he is incapable of pleading with more particularity because necessary information is within Defendants' control. *See Urb. Outfitters, Inc. v. Dermody Operating Co., LLC*, No. 321CV00109MMDCLB, 2022 WL 4134127, at *6 (D. Nev. Sept. 12, 2022); *see also* ECF No. 1.

Thus, Plaintiff's Deceptive Trade Practices claim must be dismissed for failure to meet FRCP 9(b)'s heightened pleading requirement as well.

### D. **Plaintiff Does Not – and Cannot – State a Viable Claim for Malicious Prosecution**

The Response fails to save Plaintiff's claim for Malicious Prosecution from dismissal. While Plaintiff apparently expects this Court to apply a more "lenient standard" on the issue of whether he received a favorable termination of the Criminal Action – he does not provide any authorities to support his request. Instead, Plaintiff merely asserts that because the Criminal Action was terminated without a conviction, his Malicious Prosecution claim should survive. The opposite is true.

As set forth in the Response, the question of what constitutes a "favorable termination" for purposes of a malicious prosecution claim was recently examined by this Court in *Manansingh v. United States*, No. 2:20-CV-01139-DWM, 2024 WL 1638638, at *7 (D. Nev. Apr. 15, 2024), *motion to certify appeal denied*, No. 2:20-CV-01139-DWM, 2024 WL 4647707 (D. Nev. Oct. 31, 2024). The Court in *Manansingh* was tasked with reconsidering the dismissal of a malicious prosecution claim upon remand from the Ninth Circuit, in light of the Supreme Court's

8

1  intervening decision in *Thompson v. Clark,* 142 S. Ct. 1332 (2022). Specifically, in *Thompson*,
2  the Supreme Court held that "[t]o demonstrate favorable termination of a criminal prosecution for
3  the purposes of the Fourth Amendment claim under [42 U.S.C.] § 1983 for malicious prosecution,
4  a plaintiff need only show that his prosecution ended without a conviction." 596 U.S. 36, 39
5  (2022). However, this Court ultimately determined that the foregoing, more "lenient" standard
6  (which Plaintiff is apparently attempting to invoke here) did ***not*** alter the state law requirements
7  for a "favorable termination." *Manansingh*, No. 2:20-CV-01139-DWM, 2024 WL 1638638, at *6.
8  Rather, the Court held that Nevada was more likely to follow the Restatement (Second) of Torts
9  in assessing malicious prosecution claims and thereby dismissed the plaintiffs' claim. *Id.*

10  The same must be done here. Section 660(b) of the Restatement states, in pertinent part,
11  the following:

> A termination of criminal proceedings in favor of the accused other than by acquittal is not a sufficient termination to meet the requirements of a cause of action for malicious prosecution if
>
> (a) the charge is withdrawn or the prosecution abandoned pursuant to an agreement of compromise with the accused . . . .

16  Restatement (Second) of Torts § 660 (1977).

17  The foregoing is consistent with other authorities from this Circuit. *See Awabdy v. City of*
18  *Adelanto*, 368 F.3d 1062, 1068 (9th Cir. 2004) (stating that "[a]n individual seeking to bring a
19  malicious prosecution claim must generally establish that the prior proceedings terminated in such
20  a manner as to indicate his innocence.")

21  Here, the Complaint clearly states that "Plaintiff agreed to pay restitution to eliminate the
22  stress of having an opening pending criminal case against him and Case No. 24-CR-097831 was
23  dismissed." (ECF No. 1, ¶ 40.) Put differently, the Criminal Action was only dismissed because
24  Plaintiff agreed to pay restitution to Aria. That does ***not*** constitute a favorable termination for
25  Plaintiff – which proves fatal to his Malicious Prosecution claim.

26  Accordingly, the Court must dismiss Plaintiff's Malicious Prosecution claim against Aria.
27  ///
28  ///

9

### E. **Plaintiff's Respondeat Superior Claim Against MGM Resorts Must Also Be Dismissed**

Plaintiff alleges a single claim for Respondeat Superior against MGM Resorts. The remainder of his claims – as discussed herein – are solely against Aria. Nevertheless, Plaintiff maintains that his standalone Respondeat Superior claim against MGM Resorts is proper. It is not. As stated in the Motion, respondeat superior "is a theory of liability, not a cause of action." *Phillips v. Target Corp.*, 2015 WL 4622673, at *5 (D. Nev. Jul. 31, 2015); *see also Gonzalez v. Nev. Dep't of Corr.,* 2015 WL 4711108, at *7 (D. Nev. Aug. 6, 2015) ("[r]espondeat superior is better understood as a theory of liability than as an independent cause of action . . . [c]ourts in this district have routinely dismissed respondeat superior and vicarious liability causes of action for this reason."); *Garcia v. Nevada Prop. 1, LLC,* 2015 WL 67019, at *3, 2015 U.S. Dist. LEXIS 1606, at *7 (D. Nev. Jan.6, 2015) ("Respondeat superior is a theory of liability, not a cause of action."); *Okeke v. Biomat USA, Inc.,* 927 F.Supp.2d 1021, 1028 (D.Nev.2013) ("[V]icarious liability . . . is a theory of liability, not an independent cause of action ."); *Fernandez v. Penske Truck Leasing Co., L.P.,* 2012 WL 1832571, at *1 n. 1, 2012 U.S. Dist. LEXIS 69596, at *4 n. 1 (D.Nev. May 18, 2012) ("Respondeat superior is a theory of liability holding an employer vicariously liable for the torts of its employee, it is not an independent cause of action.").

As noted in the Response, in certain circumstances, Nevada courts have recognized respondeat superior as a cause of action in cases involving torts committed by employees. *See e.g., Gonzalez*, No. 2:12-CV-02143-RFB, 2015 WL 4711108. However, that is not what is alleged by Plaintiff's Complaint. Indeed, Plaintiff has not brought intentional tort claims against MGM Resort employees (or any individual employees for that matter). Rather, the only tort claims at issue in this action are alleged against Aria, which is a subsidiary of MGM Resorts. In Nevada, respondeat superior (or vicarious liability) may extend to ***employers*** but ***not*** parent or affiliate companies. *See* NRS 41.130; *see also See Pham v. Wal-Mart Stores, Inc.,* No. 2:11-CV-01148-KJD, 2012 WL 2503076, at*2 (D. Nev. June 28, 2012) ("Plaintiff's contention that the parent company is vicariously liable is contrary to the common law holding that the parent company is not liable for the acts of its subsidiary.") Thus, not only is Plaintiff's standalone claim

for Respondeat Superior against MGM Resorts improper – but his request for leave to amend his claim for purposes of including "MGM as a defendant in all of its claims based on a respondeat superior theory of liability" is equally flawed.[5]  (ECF No. 9, 13:5-7.)

Accordingly, the Court must dismiss Plaintiff's Respondeat Superior claim against MGM Resorts.

### III.   CONCLUSION

Based upon the foregoing, Defendants respectfully request that the Court dismiss Plaintiff's Complaint in its entirety.

DATED this 17th day of February, 2026.

SEMENZA RICKARD LAW

*/s/ Lawrence J. Semenza, III*
Lawrence J. Semenza, III, Esq., Bar No. 7174
Katie L. Cannata, Esq., Bar No. 14848
10161 Park Run Drive, Suite 150
Las Vegas, Nevada 89145
*Attorneys for Defendants*

---

[5] As evidenced by the Complaint, Plaintiff has not alleged an alter ego theory of liability against MGM Resorts, which is apparently what he is intending to do by way of his improper Respondeat Superior claim.

# CERTIFICATE OF SERVICE

I am employed by the law firm of Semenza Rickard Law in Clark County, Nevada. I am over the age of 18 and not a party to this action. The business address is 10161 Park Run Drive, Suite 150, Las Vegas, Nevada 89145.

I hereby certify that on the 17th day of February 2026, I served the document(s), described as:

**DEFENDANTS ARIA RESORT & CASINO, LLC & MGM RESORTS INTERNATIONAL'S REPLY IN SUPPORT OF MOTION TO DISMISS [ECF NO. 7] PLAINTIFF'S COMPLAINT [ECF NO. 1]**

☒ by sending ☐ an original ☒ a true copy

☒ a. via **CM/ECF System** *(You must attach the "Notice of Electronic Filing", or list all persons and addresses and attach additional paper if necessary)*

**HUTCHISON & STEFFEN, PLLC**
Shelby A Dahl, Esq., sdahl@hutchlegal.com
Joseph R Ganley, Esq., jganley@hutchlegal.com
Christopher J. Lalli, Esq., clalli@hutchlegal.com
*Attorneys for Plaintiff Michael Thomson*

☐ b. **BY U.S. MAIL.** I deposited such envelope in the mail at Las Vegas, Nevada. The envelope(s) were mailed with postage thereon fully prepaid. I am readily familiar with Semenza Rickard Law's practice of collection and processing correspondence for mailing. Under that practice, documents are deposited with the U.S. Postal Service on the same day which is stated in the proof of service, with postage fully prepaid at Las Vegas, Nevada in the ordinary course of business. I am aware that on motion of party served, service is presumed invalid if the postal cancellation date or postage meter date is more than one day after the date stated in this proof of service.

☐ c. **BY PERSONAL SERVICE.**

☐ d. **BY DIRECT EMAIL.**

☐ e. **BY FACSIMILE TRANSMISSION.**

I declare under penalty of perjury that the foregoing is true and correct.

*/s/ Olivia A. Kelly*
An Employee of Semenza Rickard Law