UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| MICHAEL THOMSON,<br>Plaintiff,<br>v.<br>ARIA RESORT AND CASINNO, et al.,<br>Defendants. | Case No. 2:25-cv-2459-ART-BNW<br>ORDER ON MOTION TO DISMISS (ECF No. 7) |

Plaintiff Michael Thomson sues Aria Resort and Casino ("Aria") and MGM Resorts International ("MGM"). He alleges that they violated their duties towards him when they allowed him, or someone acting as him, to take out $75,000 in markers while he was incapacitated, and then used the criminal legal process to obtain restitution from him without investigating the validity of the markers. (ECF No. 1.) Aria and MGM move to dismiss. (ECF No. 7.) The Court now grants in part and denies in part the motion to dismiss.

## I. Factual Background

The following facts are taken from Plaintiff's complaint. (ECF No. 1.)

On the night of January 23, 2024, Plaintiff Michael Thomson was playing blackjack in the high-limit room at Aria Casino and Resort. He recalls taking out one marker for $10,000, which he repaid that night. He also recalls leaving the high-limit room for his hotel room around midnight with a few thousand dollars' worth of chips.

Mr. Thomson has a gap in his memory from midnight on the night of January 23 until the late morning of January 24. He believes he was "surreptitiously drugged on the night of January 23 or morning of January 24, 2024, which led to his complete incapacity." (*Id.* ¶ 41.)

He remembers waking up in the (late) morning of January 24, handcuffed to the wall in the Casino security holding room. He was told that he was found asleep in the Sky Suites lounge, and upon waking up, allegedly lashed out at the security guards and was detained. He was then trespassed from the casino.

On the morning of January 25, he spoke with an Aria host about what happened on the night before. The host told him that he had an outstanding marker balance. Mr. Thomson "expressed concern" and "asked for further details," which Aria didn't provide. (*Id.* 1 ¶ 26.) Aria then obtained a variance report from an unknown, possibly internal source. It's unclear what the variance report says, but Plaintiff says that there's no indication that it resolved the discrepancy.

On May 10, 2025, Mr. Thomson received a call from his bank that $75,000 of ostensible markers had been submitted for payment. Mr. Thomson instructed the bank not to pay, having no memory of taking out the markers and having received no communication from Aria addressing the concern regarding the validity of the outstanding balance. As Mr. Thomson had instructed, five of the markers were returned to Aria "not authorized" by the bank, and the remaining three were marked "NSF."

Aria apparently told Mr. Thomson that he took out eight markers totaling $75,000 between 3:00am and 9:00am on January 24. Plaintiff says that the signature on the markers only loosely resembles his own. Mr. Thomson says he asked Aria for additional information several other times about the alleged markers, but received no substantive response.

Aria subsequently turned the markers over to the Clark County District Attorney's Office, Bad Check Unit, which filed several complaint forms against Plaintiff. Plaintiff was charged with (1) drawing and passing a check without sufficient funds with intent to defraud and (2) theft in Clark County Justice Court

Case No. 24-CR-097831. Mr. Thomson was subsequently arrested. He paid over $15,000 in bail, which he alleges was then paid to Aria minus administrative fees, and then "agreed to pay restitution to eliminate the stress of having an open, pending criminal case against him and Case No. 24-CR-097831 was dismissed." (*Id.* ¶ 40.) Defendants agree that "the Criminal Action was dismissed solely because Plaintiff agreed to pay restitution to Aria." (ECF No. 7 at 14.)

Mr. Thomson now alleges that he was deliberately surreptitiously drugged on the night of January 23 or the morning of January 24, that his incapacity would have been obvious to Aria's employees and agents, that Aria nonetheless allowed him to continue gambling and then detained him, and that the signature on the markers was not his. Mr. Thomson alleges that further information is within the exclusive knowledge of the Defendants.

He sues for declaratory relief, negligence, Unfair or Deceptive Trade Practices (NDTPA) pursuant to NRS Chapter 598, unjust enrichment, breach of the implied covenant of good faith and fair dealing, malicious prosecution, and respondeat superior. All claims are against Aria only, except for respondeat superior, which is only brought against MGM, Aria's parent company.

Aria and MGM have jointly filed a 12(b)(6) Motion to Dismiss (ECF No. 7.) Their arguments are that many of Mr. Thomson's claims fail as a matter of law because he ratified the markers by paying restitution in the criminal case; his negligence claim is barred by the economic loss doctrine; his NDTPA claim failed because the NDTPA does not cover credit transactions or conduct in compliance with another rule or order, and Plaintiff fails to meet the heightened pleading standard for fraud under Rule 9; he has not alleged a favorable termination of the criminal case, which is required to plead malicious prosecution; and respondeat superior is not a standalone cause of action.

## II. Legal Standard

A court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A properly pleaded complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). While Rule 8 does not require detailed factual allegations, it demands more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555). "Factual allegations must be enough to rise above the speculative level." *Twombly*, 550 U.S. at 555. A complaint must contain sufficient factual matter to "state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). Under this standard, a district court must accept as true all well-pleaded factual allegations in the complaint and determine whether those factual allegations state a plausible claim for relief. *Id.* at 678–79.

If the Court grants a motion to dismiss for failure to state a claim, leave to amend should be granted unless it is clear that the deficiencies of the complaint cannot be cured by amendment. *DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992). Pursuant to Rule 15(a), the court should "freely" give leave to amend "when justice so requires," and in the absence of a reason such as "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of the amendment, etc." *Foman v. Davis*, 371 U.S. 178, 182 (1962).

## III. Discussion

### A. Declaratory Relief

Mr. Thomson's declaratory judgment claim survives Aria's motion to dismiss. Aria's only argument for dismissal is that upon sobering up, Mr. Thomson did not disaffirm the markers, and that if he did, he ratified them when he paid restitution in his criminal case. Whether Mr. Thomson ratified the markers is not appropriate to decide at the pleadings stage.

"Generally, contract ratification is the adoption of a previously formed contract, notwithstanding a quality that rendered it relatively void and by the very act of ratification the party affirming becomes bound by it and entitled to all proper benefits from it." *Merrill v. DeMott*, 951 P.2d 1040, 1044 (Nev. 1997) (quoting *Schagun v. Scott Mfg. Co.*, 162 F. 209, 219 (8th Cir.1908)) (concluding there was ratification by conduct and agreement based on the parties' actions and "apparent intent"). An intoxicated person "will be deemed to have ratified the contract unless within a reasonable time after becoming sober he takes steps to disaffirm it.... or by word or act attempted to repudiate the same." *Seeley v. Goodwin*, 156 P. 934, 936 (Nev. 1916). Repudiation is "a definite unequivocal and absolute intent not to perform a substantial portion of the contract. *See Kahle v. Kostiner*, 455 P.2d 42, 44 (Nev. 1960). "A repudiation is ... a statement by the obligor to the obligee indicating that the obligor will commit a breach." Restatement (Second) of Contracts § 250 (Am. Law. Inst. 1981)

Ratification is premature to decide on a motion to dismiss because it is a question of fact. *Georg v. Nevada Cent. R. Co.*, 38 P. 441, 443 (1894). It can be reversible error for a district court to dismiss a claim on a factual finding of ratification at the pleadings stage. *Kelly v. Provident Life & Acc. Ins.*, 245 F. App'x 637, 640 (9th Cir. 2007). Furthermore, Aria brings no caselaw to show that the

mere fact that someone paid restitution in a criminal case was held to be sufficient to ratify a related contract.

**B. Negligence and Negligence Per Se**

Mr. Thomson's negligence and negligence per se claim survives the motion to dismiss. Mr. Thomson says that Aria breached its common-law and regulatory duty of care to him when it extended credit to him while he was incapacitated. Aria argues that Mr. Thomson's claim is therefore barred by the economic loss doctrine

"[T]he economic loss doctrine cuts off tort liability when no personal injury or property damage occurred," with certain exceptions. *Terracon Consultants W., Inc. v. Mandalay Resort Grp.*, 206 P.3d 81, 90 (Nev. 2009). The doctrine's purpose is "to shield [defendants] from unlimited liability for all of the economic consequences of a negligent act, particularly in a commercial or professional setting, and thus to keep the risk of liability reasonably calculable." *Loc. Joint Exec. Bd. of Las Vegas, Culinary Workers Union, Loc. No. 226 v. Stern*, 651 P.2d 637, 638 (Nev. 1982).

The economic loss doctrine does not bar Mr. Thomson's negligence claim because he has pleaded more than a purely economic injury. *See Sadler v. PacifiCare of Nev.*, 340 P.3d 1264, 1268, 1267 n.2 (2014) (stating that the economic loss doctrine is "closely related to the injury requirement" of negligence). Mr. Thomson asserts that, "As a direct and proximate result of the foregoing breaches of duties, Plaintiff suffered, inter alia, physical confinement while at Aria, economic losses, and a wrongful arrest." (ECF No. 1 ¶ 60.) Physical confinement and wrongful arrest are not purely economic injuries. Where a casino's negligence resulted in the wrongful arrest of a patron, the patron has a cognizable claim. *El Dorado Hotel, Inc. v. Brown*, 691 P.2d 436, 440 (Nev. 1984), overruled in part on other grounds by *Vinci v. Las Vegas Sands, Inc.*, 984 P.2d

750 (Nev. 1999) (affirming jury verdict of negligence where the harm alleged resulted in a wrongful arrest).

### C. Unfair Trade Practices / Deceptive Trade Practices, NRS 598 and NRS 41.600

Mr. Thomson alleges that "Aria's conduct constituted unfair and deceptive trade practices by, inter alia, knowingly taking advantage of Plaintiff's intoxicated condition and entering into transactions with him (or for him) for significant amounts of money." (ECF No. 1.) Aria brings several different arguments against Mr. Thomson's NDTPA claim in the motion to dismiss, but none succeed. Aria argues that the issuance of credit is not a "good or service" under the NDTPA (ECF No. 7 at 11-12), but there is no reason to assume at this early stage in the litigation that the NDTPA excludes extensions of credit for gambling purposes from the definition of consumer goods or services. *Manley v. MGM Resorts Int'l*, No. 2:22-CV-01906-MMD-DJA, 2023 WL 3737509, at *5 (D. Nev. May 30, 2023). Aria argues that the alleged misconduct is separately regulated by the state gaming control scheme (*id.*), but the state gaming control scheme does not appear to specifically address, let alone permit casinos to issue credit to intoxicated patrons. While Aria argues that Mr. Thomson's payment of restitution in his criminal case prevents him from asserting that the markers were issued fraudulently (*id.* at 6-7), Mr. Thompson's claim cannot be dismissed on this basis for the reasons discussed *supra*. Finally, although Defendants are correct that Mr. Thomson's NDTPA claim is subject to the heightened pleading standard for fraud claims under Rule 9 (*id.* at 12-13), Mr. Thomson's complaint meets that standard.

First, Aria argues that the NTDPA applies only to those who engage in the sale or lease of consumer goods or services, and that there is no law indicating that a consumer loan is a good or a service under Section 598.0923(3) of the NDTPA.

*See, e.g. Anderson v. HSBC Bank Nevada, N.A.*, No. CV 09-04271 DDP (EX), 2009 WL 10671379, at *6 (C.D. Cal. Sept. 23, 2009) (a credit card loan is not a good or a service for the purposes of Section 598.0923(3) of the NDTPA.) At least one court in this district found that in the absence of authority, it is premature to conclude at a motion to dismiss that a gaming-related credit instrument excluded from the NDTPA's definition of a consumer good or service. *Manley*, 2023 WL 3737509, at *5. . Alternatively, another provision of the NDTPA, NRS 598.092(14), provides that unlawful deceptive trade practices also include "consumer transaction[s]" in which one party was unable to protect their own rights. Nothing appears to suggest that a casino's extension of credit for the purposes of gaming does not qualify as a "consumer transaction." *See* NRS 593.9733(1), (3)(a) ("transactions" include loans and extensions of credit).

Second, Aria points out that "[t]he provisions of [the NDTPA in] NRS 598.0903 to 598.0999, inclusive, do not apply to … [c]onduct in compliance with the orders or rules of, or a statute administered by, a federal, state or local governmental agency." NRS 598.0955(a). Aria argues that because credit instruments like markers are issued and enforced pursuant to the rules of the Nevada Gaming Control regulatory authorities and Nevada's Gaming Control Act, NRS 463.368, Aria argues that a claim relating to the issuance of a marker cannot brought under the NDTPA. But Aria does not explain with which gaming control rule or statute their conduct was "in compliance." Without such authorities, the Court declines to assume that Aria's alleged actions complied with another rule or statute. And under the Gaming Control Act, markers are explicitly excluded from the types of gaming debt that will trigger the Gaming Control Board's exclusive jurisdiction. *Manley*, 2023 WL 3737509, at *5 (citing *Zoggolis v. Wynn Las Vegas, LLC*, 768 F.3d 919, 925 (9th Cir. 2014)).

Third, Aria argues that the issuance of the markers could not have been fraudulent under the NDTPA if Mr. Thomson voluntarily paid the debt. This argument fails for the same reasons as Aria's arguments for dismissing the declaratory judgment cause of action, *supra*. Whether Mr. Thomson affirmed the markers after repudiating them is a question of fact inappropriate for resolution at this stage.

Fourth and finally, Aria argues that a fraud claim under the NDTPA must meet the heightened pleading requirement under Rule 9(b), and that the Complaint does not meet this standard. *See Vess v. Ciba–Geigy Corp. USA*, 317 F.3d 1097, 1103 (9th Cir. 2003). Claims that sound in fraud are subject to both Rule 8 and Rule 9(b)'s pleading requirements. Under Rule 9(b), "must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). A plaintiff must provide the "who, what, when, where, and how" of the alleged fraudulent misconduct. *Vess*, 317 F.3d. at 1106. This requires "more than the neutral facts necessary to identify the transaction. The plaintiff must set forth what is false or misleading about a statement, and why it is false." *Id.* (citation and quotations omitted). "The standard can be relaxed when the facts of fraud are in the defendant's exclusive control, but the plaintiff must still state the 'factual basis for the belief.'" *Motogolf.com, LLC v. Top Shelf Golf, LLC*, 528 F. Supp. 3d 1168, 1174 (D. Nev. 2021) (quoting *Neubronner v. Milken*, 6 F.3d 666, 672 (9th Cir. 1993)).

Mr. Thomson has met the standard of Rule 9(b). The NDTPA claim is subject to Rule 9(b)'s heightened pleading standard because it sounds in fraud. *See id.* (applying Rule 9(b) to plaintiff's NDTPA claim); Manley, 2023 WL 3737509, at *6 (same); NRS 41.600(2)(e) (defining consumer fraud to include deceptive trade practices under the NDTPA). Mr. Thomson alleges that between 3:00 and 9:00 a.m. on January 24, 2024 (when), in Aria Resort and Casino – possibly in

the high-limit blackjack room (where), Aria (who) knowingly took advantage of his involuntary intoxication (how) and allowed him to agree to $75,000 in ostensible markers (what) for its own enrichment (why). Taking the facts alleged in the complaint as true, details such as which specific Aria employees were involved in the alleged bad acts are within the exclusive control of the Defendants, and omission at this stage is excusable. *Motogolf.com*, LLC, 528 F. Supp. 3d at 1174.

**D. Unjust Enrichment**

Mr. Thomson's claim of unjust enrichment survives the motion to dismiss. To state a claim for unjust enrichment under Nevada state law, a plaintiff must show (1) a benefit conferred on the defendant by the plaintiff; (2) appreciation by the defendant of such benefit; and (3) acceptance and retention by the defendant of such benefit under inequitable circumstances.

At this stage, Mr. Thomson has alleged facts showing that Aria received a benefit of $75,000 from him under circumstances where they took advantage of Mr. Thomson's incapacity. That is enough to survive the motion to dismiss. Aria's only argument for dismissal of this claim is that Mr. Thomson ratified the markers by paying restitution in the criminal case. As reasoned *supra*, ratification is an issue of fact that is not properly analyzed at the motion to dismiss stage.

**E. Breach of the Implied Covenant of Good Faith and Fair Dealing**

Mr. Thomson's claim of breach of the implied covenant of good faith and fair dealing is dismissed with leave to amend.

A breach of the implied covenant of good faith and fair dealing occurs "[w]here the terms of a contract are literally complied with but one party to the contract deliberately countervenes the intention and spirit of the contract." *Hilton Hotels Corp. v. Butch Lewis Prods., Inc.*, 808 P.2d 919, 922-23 (Nev. 1991). "To state a claim for breach of the implied covenant of good faith and fair dealing, a plaintiff must allege (1) plaintiff and defendant were parties to a contract; (2)

defendant owed a duty of good faith the plaintiff; (3) defendant breached that duty by performing in a manner that was unfaithful to the purpose of the contract; and (4) plaintiff's justified expectations were denied." *Arminas Wagner Enterprises, Inc. v. Ohio Sec. Ins. Co*., 658 F. Supp. 3d 883, 892 (D. Nev. 2023) (citing *Hilton Hotels Corp.*, 808 P.2d at 922). A breach of the implied covenant of good faith and fair dealing generally gives rise to contract liability, but where a special relationship exists between the parties, it may also give rise to liability in tort. *Shaw v. CitiMortgage, Inc.*, 201 F. Supp. 3d 1222, 1252 (D. Nev. 2016), amended in part, No. 3:13-CV-0445-LRH-VPC, 2016 WL 11722898 (D. Nev. Nov. 1, 2016) (citing *State v. Sutton*, 103 P.3d 8, 19 (Nev. 2004)).

In short, the implied covenant of good faith and fair dealing holds parties to a contract to a certain standard in performance. *A.C. Shaw Constr. v. Washoe Cty.*, 784 P.2d 9, 9 (Nev. 1989) (quoting Restatement (Second) of Contracts § 205) ("Every contract imposes upon each party a duty of good faith and fair dealing in its performance and execution.") But on the theory brought forward in the hearing on the motion to dismiss, Mr. Thomson is alleging improper contract formation. Mr. Thomson's counsel stated that Aria breached the implied covenant of good faith and fair dealing at the moment when Mr. Thomson or someone on his behalf took out the disputed markers. But nowhere is it alleged that Aria allowed Mr. Thomson to take out the markers as a bad-faith means of complying with the literal terms of some other predicate contract. Since the implied covenant of good faith and fair dealing cannot be breached until a contract has already been formed and is in the course of performance, Mr. Thomson's claim is insufficiently pleaded but may be fixed through amendment.

**F. Malicious Prosecution**

Mr. Thomson's malicious prosecution claim survives the motion to dismiss. "The elements that must be proved in a malicious prosecution action are: (1) a

lack of probable cause to commence the prior action; (2) malice; (3) *favorable* termination of the prior action; and (4) damages." *Lester v. Buchanen*, 929 P.2d 910, 912 (1996) (emphasis added) *but see Chapman v. City of Reno*, 455 P.2d 618, 620 (1969). The Supreme Court of Nevada has not explained what makes a termination favorable.

In the absence of controlling authority, some courts in the District of Nevada have followed authorities that "require[] a termination reflecting the merits of the action and plaintiff's innocence of the misconduct." *Manansingh v. United States*, No. 2:20-CV-01139-DWM, 2024 WL 1638638, at *7 (D. Nev. Apr. 15, 2024). In states with such a rule, a dismissal may be favorable if it reflects the opinion of the prosecuting party or the court that the action lacked merit. *Awabdy v. City of Adelanto*, 368 F.3d 1062, 1068 (9th Cir. 2004). Termination is generally not considered favorable if the "charges were withdrawn on the basis of a compromise." *Id.*

But the Supreme Court has observed that it is more logical to treat all dismissals as favorable terminations, in the context of the constitutional tort of malicious prosecution in violation of the Fourth Amendment:

> The question of whether a criminal defendant was wrongly charged does not logically depend on whether the prosecutor or court explained why the prosecution was dismissed. And the individual's ability to seek redress for a wrongful prosecution cannot reasonably turn on the fortuity of whether the prosecutor or court happened to explain why the charges were dismissed. In addition, requiring the plaintiff to show that his prosecution ended with an affirmative indication of innocence would paradoxically foreclose a § 1983 claim when the government's case was weaker and dismissed without explanation before trial, but allow a claim when the government's evidence was substantial enough to proceed to trial. That would make little sense.

*Thompson v. Clark*, 596 U.S. 36, 49 (2022)

Regardless of which termination rule applies, it is too early in the proceedings to decide whether Mr. Thomson received a favorable dismissal. If the

rule of *Thompson v. Clark* applies and all dismissals are favorable terminations, then Mr. Thomson's malicious prosecution claim survives the motion to dismiss. Alternatively, accepting for the purposes of argument that the rule of *Manansigh* and *Awabdy* applies, factual issues remain regarding the nature of the termination. *See Chapman v. City of Reno*, 455 P.2d 618, 620 (1969) (reversing the dismissal of a malicious prosecution claim partially on the basis that "without a record it is difficult, if not impossible, to know what transpired" in the prior proceeding). Mr. Thomson says that he paid restitution, and that he was motivated by his desire to get out of the case. But the complaint is absent of any information regarding why prosecutor or the state court were amendable to dismissing the case. The basis on which the charges were withdrawn is an issue of fact not appropriate to decide at this stage. Since the malicious prosecution claim survived regardless of which rule applies, it is not necessary to decide the governing rule at this stage.

**G. Respondeat Superior**

Mr. Thomson's respondeat superior claim against MGM, which is also his only claim against MGM, is dismissed. The complaint suggests that MGM was only involved in the alleged misconduct insofar that Aria employees are also employees of Aria's parent company. (ECF No. 1 ¶ 10.) Mr. Thomson's counsel confirmed in the hearing that this claim seeks to hold MGM by virtue of being the parent company of the direct employer. Mr. Thomson does not allege that there were employees of MGM involved in the alleged misconduct who were not principally employed by Aria.

Respondeat superior extends to employers, under certain circumstances, liability for employee-committed torts. *See* NRS 41.130, 41.745; *Rockwell v. Sun Harbor Budget Suites*, 925 P.2d 1175, 1179-81 (Nev. 1996)). It does not extend responsibility to parent companies for the actions of their subsidiaries. *See* NRS

41.130. Respondeat superior may be asserted as an independent cause of action under state law. *Gonzalez v. Nevada Dep't of Corr.*, No. 2:12-CV-02143-RFB, 2015 WL 4711108 (D. Nev. Aug. 6, 2015) (citing *Rockwell*, 925 P.2d at 1179).

Mr. Thomson's theory of respondeat superior liability seeks to hold the parent company vicariously liable for the actions of its subsidiary, which is not typically allowed. "It is a general principle of corporate law deeply ingrained in our economic and legal systems that a parent corporation … is not liable for the acts of its subsidiaries." *U.S. v. Bestfoods*, 524 U.S. 51, 61 (1998) (cleaned up). Under Nevada common law, MGM may be vicariously liable if it had control over the party that was at fault. *National Convenience Stores, Inc. v. Fantauzzi*, 584 P.2d 689, 691 (1978). But Mr. Thomson has not pleaded facts that suggest that MGM had control over individuals who were responsible for his harms.

## IV. Conclusion

Defendants' motion to dismiss (ECF No. 7) is therefore GRANTED IN PART AND DENIED IN PART.

Plaintiffs' claims of breach of the implied covenant of good faith and fair dealing and respondeat superior are dismissed with leave to amend within 30 days of this order. The motion is denied with respect to all other claims.

DATED: August 5, 2026

ANNE R. TRAUM
UNITED STATES DISTRICT JUDGE